No. 21475.

ROMIE LEE MCCOY *v.* THE DISTRICT COURT OF THE CITY AND COUNTY OF DENVER; HON. EDWARD J. KEATING, JUDGE.
(397 P.2d 733)

Decided December 14, 1964.     Rehearing denied January 11, 1965.

CHARLES GINSBERG, for petitioner.

WALTER F. SCHERER, for respondents.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

THIS is an original proceeding in prohibition in which this court issued a rule, directed to respondent district court and the judge thereof, to show cause why the relief sought should not be granted.

The admitted facts giving rise to this proceeding are as follows:

The petitioner, Romie Lee McCoy, was named defendant in an information filed in the respondent court in

which it was alleged that she committed an assault upon one Ellison Dave McCoy with intent to murder him. She entered a plea of not guilty and filed her written waiver of trial by jury. Pursuant to a prior setting, the case came on for trial on June 2, 1964. The district attorney and counsel for the defendant made their opening statements, and Ellison Dave McCoy was called as a witness; was duly sworn; and was examined by the district attorney. After giving certain testimony, the witness collapsed and died in the courtroom. A recess was taken after which the court re-convened. The following proceedings then took place:

"THE COURT: In this matter, case number 52245, I believe the record should show very abruptly this matter was halted or terminated as of this morning at or about ten a.m., when the complaining witness, one Ellison Dave McCoy, was stricken with some disability —apparently a heart attack—while testifying, and died shortly thereafter in this courtroom, which of course, has terminated the proceeding insofar as this particular case is concerned at this time.

"Does either side have any requests to make of this Court at this time?

"MR. TITCOMBE: If your Honor please, at this time I would move for a mis-trial because of events this Court has related, and the fact that the defendant in this action, who was married to the complaining witness who died in this courtroom, was shaken and upset and left the courtroom, and other witnesses were so visibly shaken and upset, I believe it would be impossible to proceed at this time, and respectfully request a mis-trial.

"MR. GINSBERG: We object to a mis-trial. This defendant has been living under the pressure of this case for a long time now. Her life has been most unbearable. The State's witness died—their principal witness. That doesn't alter the facts in this case. If we submitted this

matter to a jury certainly there would have been jeopardy, and there is jeopardy in this matter now.

*   *   *

"THE COURT: Did you have anything further, Mr. District Attorney?

"MR. TITCOMBE: Nothing, your Honor.

"THE COURT: I believe this Court can agree with certain things stated by counsel on both sides and also to enumerate the statements made by Mr. Ginsberg of the situation in which this defendant finds herself. But in view of the facts and circumstances that arose this morning, through fault of no one, this Court doesn't wish, certainly, to prolong the agony of any defendant, but despite that fact, I am going to grant the motion for a mistrial at this time, and suggest to counsel for the defense that the question of jeopardy and those matters can be taken up at a later time, and ask the District Attorney to do what he can to expedite the matter, and preferably it be done as expeditiously as possible.

"The motion for mis-trial will be granted and your exceptions will be noted, Mr. Ginsberg."

On June 29, 1964, defendant moved the district court for dismissal of the information on the ground that she had been placed in jeopardy in connection with said alleged offense and could not again be placed on trial. The respondent court heard the motion, overruled it, and ordered that the case be tried on October 26, 1964. On September 30, 1964, the petition in prohibition was filed in this court and attached thereto was a certified copy of the full record as made in the district court.

The ultimate question for determination by this court is whether the scheduled trial of Romie Lee McCoy, under the foregoing circumstances, would deny her the protection guaranteed by Article II, section 18, of the Colorado Constitution which provides in pertinent part: "* * * nor shall any person be twice put in jeopardy for the same offense. * * *"

■ It is well settled that jeopardy attaches in the prosecution of a criminal case which is tried to the court without a jury "at the point where presentation of proof begins." *State v. Blackwell*, 65 Nev. 405, 198 P.2d 280, *cert. denied*, 366 U.S. 939.

■ In *Markiewicz v. Black*, 138 Colo. 128, 330 P.2d 539, this court approved the rule governing "the point of time when, or the state of the prosecution at which, jeopardy attached." That rule is stated in 22 C.J.S. 375, and includes in pertinent part the following statement:

"* * * In a case submitted to the court without a jury, jeopardy begins after accused has been indicted, arraigned, and has pleaded, and the court has begun to hear the evidence, * * *."

We know of no decision from any jurisdiction which is out of agreement with this rule. Those cases which support it are so numerous and well accepted as to require no further documentation.

■ In the instant case the trial had commenced; the district attorney and counsel for the accused had made their respective opening statements as to the facts which they expected to prove; and the first witness for the people had been sworn and answered all questions put to him, until he collapsed. Clearly, the defendant was in jeopardy.

■■ The remaining question then is—whether there was legal justification to declare a mistrial which in turn prevents the defendant from sustaining her plea of former jeopardy. In *Brown v. People*, 132 Colo. 561, 291 P.2d 680, a mistrial was ordered in the trial court. In habeas corpus proceedings before this court, the question for determination was stated as follows: "Was the order of mistrial *legally justified?*" This court answered the question in the affirmative. The opinion contains the following pertinent language:

"* * * Consider for a moment the term 'legal justification.' What is it? To be legally justified there must be a reasonable objective sought and a substantial pur-

pose attained. The granting of a mistrial would not be legally justified because of some whimsical notion or frivolous impulse, such as, for instance, that some member of the jury died [sic] his hair or wore an artificial limb. While the cause for the order must be substantial and real, it need not be vital. It need only be such as could affect, or might in some way or manner be considered as interfering with, retarding, or influencing, to even a slight degree, the administration of honest, fair, even-handed justice to either, both, or any, of the parties to the proceeding. When it appears to the chancellor that such an irregularity prevails and when in the exercise of his sincere judgment he declares a mistrial, it must be said that he has fairly exercised his judicial discretion and that his action is properly and legally justified. In short, when any irregularity worthy of notice and capable of correction appears, a declaration of mistrial is legally justified. Such situations manifest themselves in many and devious ways impossible to enumerate. 53 American Jurisprudence, section 971, page 682."

In this connection we direct attention to the statement of the respondent judge at the time the motion to dismiss was denied:

"THE COURT: Let the record show in the above-entitled matter that counsel for the defendant has submitted to this Court a very exhaustive and learned Brief urging the rights of the defendant at this time to dismiss the Information on the grounds of double jeopardy. I believe the record does show at the time the unfortunate situation occurred and the chief prosecution witness died on the witness stand here, that there was a great deal of confusion, resulting in near hysteria on the part of the defendant, and this court was also shaken by what happened here.

"At the time the Court did grant a motion for mistrial, and counsel for the defendant has very ably argued that that, in substance, was error on the part

of the Court and that the motion for a dismissal on the grounds of double jeopardy should now be entered.

"In view of the fact that there was great hysteria by the defendant and other people in this courtroom, and all the events leading up to the situation where the Court granted a mis-trial, the Court does not feel that it was in error. The defendant was so shaken that it was necessary for her to leave the building, and the Court was informed, proceeded to her home to regain her composure. The Court does not feel that jeopardy set in, and in view of the above and foregoing, the motion, Mr. Ginsberg, is denied and your exceptions will be noted."

██ Within the ambit of the language of this court above quoted from *Brown v. People,* supra, we hold that in granting the mistrial there was no abuse of discretion; that under all the circumstances there was a "reasonable objective sought" and "a substantial purpose attained," and that the cause for the order was in fact "substantial and real."

There being no abuse of discretion on the part of the respondents operating to the prejudice of the petitioner, the rule is discharged.

Mr. Justice Frantz dissents.

Mr. Justice Frantz dissenting:

I entertain the view that the action of the trial court in ordering a mistrial on the motion of the People, under the circumstances of this case, constituted an acquittal of the offense charged, and thus bars a further prosecution for the same offense. It is not within the power of the trial court, by its act of declaring a mistrial because of the death of the complaining witness in the course of a trial to the court, to deprive the defendant of the constitutional benefit prohibiting a person from being put twice in jeopardy for the same offense.

The defendant had waived her right to a trial by

jury of the issue raised by her plea of not guilty to the charge of assault with intent to murder. Trial to the court had commenced. Opening statements were made. The first witness called by the People was the person alleged to have been thus assaulted. He was sworn and, after answering a few questions, slumped in the witness-box. It was ascertained that he had died while he had been testifying.

After the ensuing recess, the People moved for a mistrial. The motion was granted against the objection and over the protest of the defendant. Counsel for the defendant warned the trial court that his client had been in jeopardy. In resisting a setting of the case for trial, defendant formally maintained that she had previously been put in jeopardy. Having sustained an adverse ruling, she is here in original proceedings, seeking to have the trial court prohibited from further proceeding on the theory of former jeopardy.

It is ordained by our state Bill of Rights, Article II, Section 18, that no person shall "be twice put in jeopardy for the same offense. If the jury disagree, or if the judgment be arrested after the verdict, or if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy."

At what stage of a criminal proceeding, to be tried to the court without a jury, does jeopardy set in? This court has accepted the almost universal rule, as it is stated in former 22 C.J.S., Criminal Law, § 241, from which we quoted with approval in *Markiewicz v. Black*, 138 Colo. 128, 330 P.2d 539, 75 A.L.R.2d 678, the following:

"* * * In a case submitted to the court without a jury, jeopardy begins after accused has been indicted, arraigned, and has pleaded, and the court has begun to hear the evidence. . . ."

In the *Markiewicz* case we also cited the following language from *State v. Pittsburg Paving Brick Co.*, 117 Kan. 192, 230 Pac. 1035, to support our holding therein:

"So far as jeopardy is concerned, the commencement of a trial without a jury must be deemed the equivalent of one begun with a jury. The peril of jeopardy arises before a judge acting alone under the same circumstances as before a judge and jury."

Admittedly, the commencement of testimony in the present case ushered in jeopardy.

Could the trial court declare a mistrial, in a case tried without a jury, under the circumstances of this case? What effect did the declaration of a mistrial have upon a subsequent trial of the case? These are the critical questions which must be answered.

So far as I can ascertain, the device of a mistrial has application only to jury trials. See 23A C.J.S., Criminal Law, §§ 1382-1385. Indeed, mistrial and discharge of a jury are interchangeable judicial acts. I can conceive of no matter arising in the course of a trial to a court which would warrant that court to declare a mistrial. That "it is impossible to proceed without manifest injustice to the public, or to the defendant himself" is basic to the lawful declaration of a mistrial. *People v. Barrett,* 2 Cai. R. (N.Y.) 304, 2 Am. Dec. 239.

It was noted in the case of *Brown v. People,* 132 Colo. 561, 291 P.2d 680, that a mistrial should not be granted and a jury discharged unless there was "legal justification" for such action. See *Kelly v. People,* 121 Colo. 243, 215 P.2d 336. Legal justification "need only be such as could affect, or might in some way or manner be considered as interfering with, retarding, or influencing, to even a slight degree, the administration of honest, fair, even-handed justice to either, both, or any of the parties to the proceeding." *Brown v. People,* supra.

Can "legal justification" be made applicable to a court as the trier of the facts? Can it be said that the judge would be more just on a retrial? May we assume that the event which caused him to declare a mistrial will, in some manner, by a lapse of time, make him more amenable to render "even-handed justice to" the

parties on the commencement of the second trial, more so than if he had continued the case on his own motion for resumption of the trial at a later date? The very content of these questions indicates negative answers.

Reasons for using mistrial procedures in non-jury cases being non-existent, mistrials in such cases are improper and unwarranted. Ratio legis est anima legis — the reason of law is the soul of law. *Rains v. Rains,* 97 Colo. 19, 46 P.2d 740. Accordingly, a mistrial should not have been declared.

What effect did the declaration of a mistrial have on jeopardy? The common law rule against placing an accused twice in jeopardy still prevails in Colorado. Common law double jeopardy bars a second conviction or acquittal for the same offense. Davidson v. People, 64 Colo. 281, 170 Pac. 962. Autrefois acquit, where there had been an acquittal, and autrefois convict, where there had been a conviction, were the pleas known to the common law. Unknown to the common law was the plea of double jeopardy as such. Miller, "The Plea of Double Jeopardy in Missouri," 22 Mo. L.R. 162, 165-166 (1957).

It would appear that double jeopardy, in the constitutional sense, has some broader implications than come within the ancient common law concept. In this sense, a trial to acquittal or conviction is not contemplated. *Markiewicz v. People,* supra. If such had been the intention of the framers of our Constitution, they could have prescribed, as did the State of Mississippi, that "there must be an actual acquittal or conviction on the merits to bar another prosecution." Art. 3, § 22, Const. of Miss. See Art. 1, § 12, Const. of Iowa.

How should the Court construe that part of Article II, Section 18, of the Colorado constitution which provides that "if the jury disagree, or if the judgment be arrested after the verdict, or if the judgment be reversed for error in law, the accused shall not be deemed

to have been in jeopardy"? Research reveals no answer to the question.

From structure and content of this constitutional provision, it could be judiciously argued that the framers intended to carve out of the whole three specific situations which would not constitute double jeopardy. As the present case does not come within the scope of any of the three specifically mentioned situations, by the process of exclusion it must follow logically that it does constitute jeopardy. Although the maxim, "Expressio unius est exclusio alterius," should be resorted to cautiously in the construction of constitutional provisions, there are times when its application comports with the apparent intention of the framers. Such appears to be the case here. *Whitney v. Bolin,* 85 Ariz. 44, 330 P.2d 1003.

It is my conviction that the mention of the three exceptions to the application of the constitutional doctrine of double jeopardy excludes any other exceptions. The question on this matter is still open to resolution in this state. Nevertheless, it is my considered judgment that, on the basis of decisions of this state recognizing the doctrine of "manifest necessity," there would be no grounds for a mistrial in this case. Assuming that this Court knowledgeably engrafted on Article II, Section 18, of our Constitution the rule of manifest necessity, as avoiding jeopardy, this case does not come within the rule.

This Court did take unto itself in *Brown v. People,* supra, language from the opinion of Mr. Justice Story in the case of *United States v. Perez,* 22 U.S. (9 Wheat.) 579, reading as follows:

"We think that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, *there is a manifest necessity for the act, or the ends of public justice would be defeated.* They are to

exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially courts should be extremely careful how they interfere with any of the chances of life in favor of the prisoner." (Emphasis supplied.)

Courts invoking the doctrine of manifest necessity as rendering jeopardy inapplicable rationalize thus:

"Jeopardy, as such, becomes dependent upon the presumption that the tribunal will continue legally organized, with the accused being charged, to the end of the trial, and in the end, pronounce a valid judgment — either for or against the accused." "The Pleas of Double Jeopardy in Missouri," supra, 265.

But in a trial to the court without a jury, the tribunal continues legally organized. Where the jury is part of the court, an unexpected event may disrupt the organization of the court by making it questionable whether the jury will be available at a later date.

Hence, manifest necessity, in order to achieve justice, has some bearing on a jury trial. The availability of the jury at a later date, the convenence of the individual members of the jury, the possibility that certain jurors may be absent from the city or may be required to undergo medical or surgical treatment, and a myriad of other unforeseen circumstances, may make it necessary to declare a mistrial rather than continue the cause because of some untoward event creating an emergency in the trial of a case. But the judge who hears a criminal case without a jury can always postpone the hearing of it until some future time expeditiously convenient to himself and the parties involved.

The court could have continued the criminal case in question for further hearing at some later date. There was not a manifest necessity for a mistrial under the

present circumstances. Justice would have been better served by adjourning the hearing to a later date, at which time the court would take up the trial of the cause at that point where it had been brought to a halt by reason of the death of the witness.

It follows that the ends of justice were not furthered when the court declared a mistrial, especially when there was no manifest necessity for doing so. A mistrial, not within the compass of the manifest necessity doctrine, put the accused in the position of effectively pleading that she has been put twice in jeopardy, and that the prosecution is barred from further proceeding against her on the charge. *Cornero v. United States,* 48 F.2d 69.