No. 25106.

HENRY CARL BARRINER *v.* DISTRICT COURT, DIVISION I IN AND FOR THE COUNTY OF JEFFERSON, STATE OF COLORADO, HONORABLE RONALD J. HARDESTY, JUDGE, AND A. L. HERRMANN, DISTRICT ATTORNEY, FIRST JUDICIAL DISTRICT OF THE STATE OF COLORADO.

(484 P.2d 774)

Decided May 10, 1971.

GERASH and KAISER, WALTER L. GERASH, for petitioner.

A. L. HERRMANN, JR., District Attorney, for respondents.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

THIS is an original proceeding. The petitioner seeks relief in the nature of prohibition to enjoin a second trial after a previously declared mistrial. C.A.R. 21. We issued a rule to show cause why the relief sought should not be granted to which the respondents have answered. The issue raised by the proceeding is whether, under the circumstances hereinafter set forth, petitioner's right under Article II, § 18 of the Constitution of Colorado, not to "be twice put in jeopardy for the same offense," has been infringed.

The following circumstances gave rise to the controversy before us:

The petitioner was charged with assault with intent to commit rape. His trial by a jury occurred on June 2

and 3, 1970. At 5:00 p.m. on June 3, the case was submitted to the jury and the court announced that it, " . . . will be in recess until we get a verdict."

At 11:35 p.m. on June 3 the court, in chambers and out of the presence of the jury, with the defendant and respective counsel present, made the following statement:

"The bailiff has informed the court that the jury wishes a further definition of the term 'entrapment.' The court has, with the assistance of counsel, drafted instruction numbered 18, which is self-explanatory. I have also prepared instruction numbered 19, which is a hung-jury instruction; because the jury did commence their deliberations about five o'clock, and then took about an hour and a half for dinner, and that after they returned from dinner they resumed their deliberations and still have not arrived at a verdict. The court has also prepared an instruction for a sealed verdict. This sealed verdict will be returned in Division 3, that's Judge Stoner's court, tomorrow morning at 8:30, should they arrive at a verdict this evening.

"It is also the intention of the court not to make them work beyond 2:00. If they are unable to arrive at a verdict by 2:00 in the morning, I think we will declare the case a hung jury at that point and declare a mistrial, after the instructions that I am going to give them.

"MR. MYERS: Are you going to inform them, Your Honor?

"THE COURT: No, I am not going to inform them of that. If the bailiff calls me in at that hour and says that they are still hopelessly deadlocked and that the jury is hung, that would give them another two hours to deliberate this matter. And after the Instruction 19 on hung jury, and further definition of this term 'entrapment,' which seems to be bothering them, if they can't arrive at a verdict by then, I think we better declare the mistrial, hung jury.

"MR. MYERS: All right."

These further facts appear in the judge's remarks in connection with the court's denial of petitioner's motion to dismiss:

" . . . It doesn't show on the record, but the bailiff did call me at two o'clock in the morning and asked me what to do. He reported to me at that time the jury had not arrived at their verdict, and the foreman told him they were deadlocked. At that point I told them [him] to discharge them, and I would declare a mistrial, which was done, and the clerk of the court was duly informed of that the next morning, and she made a record accordingly and entered the appropriate orders. "The only other alternative the Court had at that time was to put the jury to bed."

▆ The defense of double jeopardy is based upon Article II, § 18 of the Constitution of Colorado which provides:

"No person shall be compelled to testify against himself in a criminal case *nor shall any person be twice put in jeopardy for the same offense. If the jury disagree,* or if the judgment be arrested after the verdict, or if the judgment be reversed for error in law, *the accused shall not be deemed to have been in jeopardy.*" (Emphasis added.)

Colorado Rules of Criminal Procedure 31(a)(2) is pertinent to the consideration of the question of double jeopardy in the posture in which this case has been presented to us. In material part, it reads:

"When the jury retires to consider its verdict, *the bailiff shall be sworn or affirmed to conduct the jury to some private and convenient place, and to the best of his ability to keep the jurors together until they have agreed upon a verdict. The bailiff shall not speak to any juror about the case except to ask if a verdict has been reached,* nor shall he allow others to speak to the jurors. When they have agreed upon a verdict, the bailiff shall return the jury into the court." (Emphasis added.)
*See also* C.R.S. 1963, 39-7-20.

The petitioner places his principal reliance upon *Paulson v. Superior Court of El Dorado County,* 22 Cal.Rptr. 649, 372 P.2d 641. *Paulson* holds that after jeopardy attaches, if a jury is discharged without returning a verdict, the defendant cannot again be put in jeopardy unless he consented to the discharge or legal necessity required it. The respondents argue that *Paulson* is not applicable, because the decision rested upon a California statute and, unlike the instant case, the petitioner there did not consent to the discharge of the jury. For reasons which will hereafter appear, we are not convinced that respondent's position is well taken. To begin with, as far back as 1889, in the application of Colo. Const. art. II, § 18 (and the equivalent of Crim. P. 31(a)(2)), Colorado formulated a rule of law which is comparable to the statute upon which the California Supreme Court relied. *In re Allison,* 13 Colo. 525, 22 P. 820; *Brown v. People,* 132 Colo. 561, 291 P.2d 680. As to the question of consent and waiver, a further analysis of that argument will be developed subsequently in this opinion.

▪ The facts in this case are as important in what does not appear as are the facts which we have outlined. We note that there was no motion for a mistrial by the district attorney; that in the last session in open court at 11:35 p.m., there was no indication of an inability on the part of the jury to agree upon a verdict. In fact, no juror ever stated in open court that he thought the jury could not agree on a verdict. The jury was discharged by the bailiff without the jury returning to the courtroom to directly communicate the state of their deliberations to the trial judge. Under the constitution, "If the jury disagree, . . . the accused shall not be deemed to have been in jeopardy." The question, therefore, before us is: Did the jury *disagree,* within the contemplation of that term as used in the constitution? We answer this question in the negative.

▪ In reaching our conclusion, a closer look at *In re Allison, supra,* is indicated. In that case, the court

stated the law and the public policy of this state to be: "... Unquestionably the court should employ all legal and reasonable measures to secure a verdict after trial of a cause. On the other hand, however, the law inhibits the coercion of verdicts by improper punishment or influence. Discord exists upon the subject in hand among the adjudicated cases; but, under the foregoing constitutional provision, there can be no doubt as to the view we should favor. *It is expressly declared that the jury, upon failure to agree, may be discharged without prejudice to another trial. It is obvious that the court must determine when a disagreement, sufficient to justify this discharge of the jury, exists.* The length of time during which they must deliberate, and the exact circumstances warranting the conclusion that they have failed to agree in a given case, are of necessity matters resting largely in the sound discretion of the court. No specific period can be designated, nor can any absolute rule be laid down, to control this discretion, and, unless it appears to have been grossly abused, the objection would not be ground for reversal upon error, much less for a discharge upon *habeas corpus.* See on this subject, Whart. Crim. Pl. & Pr. (9th ed.) §§ 504-506; *U.S. v. Perez,* 9 Wheat. 579." (Emphasis added.)

In *Brown v. People, supra,* the court adopted this language from *U.S. v. Perez,* 22 U.S. 256 (9 Wheat. 579):

"We think that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, *or the ends of public justice would be defeated.* They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with greatest caution, under urgent circumstances, and for very plain and obvious causes; ..."

The court in *Brown* laid down these further guidelines: "The elements entering into the question of when a trial court is justified in declaring a mistrial are not so specific and circumscribed that the issue may be decided as a matter of law nor are there established standards in adequate detail to enable the court so to do. . . . Its determination will not be disturbed on review, unless it clearly appears that its discretion has been abused, and, as held by this Court, with resulting prejudice to petitioner, or under such circumstances that it may be said that it amounts to a denial of justice. *Kelly v. People,* 121 Colo. 243, 250, 215 P.2d 336."

■ As pointed out above, the declaration of a mistrial, because of the inability of the jury to agree upon a verdict, lies within the sound discretion of the trial judge. Consequently, in the absence of an abuse of that discretion, the discharge of a jury and a declaration of a mistrial for inability of the jury to reach an agreement is not error, and the defendant, under such circumstances, has not been placed in jeopardy.

■ We conclude from our study of the situation above-described that the court failed to exercise its power with that degree of caution which the circumstances demanded. The primary deficiency, as we view it, lies in the court's failure to determine as a matter of fact that the jury was hopelessly deadlocked immediately before its discharge.

■ The fact that the bailiff reported to the judge by telephone at 2:00 a.m. that the jury was deadlocked does not alter the situation. Crim. P. 31 (a) (2) proscribes the practice followed by the court. Informal communications between the court and jury, via the bailiff, are improper. All communications should be made in open court with the parties afforded an opportunity to make timely objections to any action by the court or jury which might be deemed irregular.

The court recognized the latitude of his power in the situation with which he was confronted at 2:00 a.m.

when he said: "The only other alternative the court had at that time was to put the jury to bed." He should have either done this or had the jury and counsel summoned into open court to inquire into the state of its deliberations.

We return now to the question of whether the petitioner consented to the discharge of the jury under the peculiar circumstances of this case.

The petitioner urges that the "consent" has no force or validity, because the conditions and assumptions upon which it was based were never legally met. The petitioner, he continues, agreed to a future situation where the jury was "hopelessly deadlocked," where he had a right to anticipate that the court would follow the usual procedures in discharging a jury, not to the declaration of a mistrial based upon hearsay and procedural violations of the bailiff done totally off the record and out of court, where no objection to the procedure was possible. We agree with the petitioner's position.

The rule is made absolute.