## No. 25688

**Freddie Joe Maes v. The District Court in and for the City and County of Denver, State of Colorado, and the Honorable Robert E. McLean, one of the Judges thereof**

(503 P.2d 621)

Decided November 27, 1972.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Alvin D. Lichtenstein, Deputy, for petitioner.

Jarvis W. Seccombe, District Attorney, Second Judicial District, Frederic B. Rodgers, Deputy, Joseph T. Carroll, Jr., Deputy, for respondents.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

In this original proceeding, we issued our rule to show cause why respondents should not be prohibited from

re-trying petitioner on criminal charges, the initial trial of which resulted in a mistrial. The matter is now at issue and, having considered the merits of the controversy, we make the rule absolute.

Petitioner was charged with assault to rob and assault with a deadly weapon. Trial was to a jury. The voir dire examination of prospective jurors was not recorded. However, we are able to gather from the record — and there is no contention to the contrary — that defense counsel, while interrogating the jurors, inquired of at least two jurors whether the fact that petitioner was part Chicano and part Indian would prevent them from being fair and impartial jurors. The district attorney thereafter objected to this question. The court admonished defense counsel not to pursue the racial matter further unless proof of petitioner's racial background would be offered. Defense counsel advised that he intended to offer testimony concerning petitioner's Chicano-Indian background. However, in subsequent questioning of the jury panel, counsel limited his questions concerning racial prejudice to inquiring whether the jurors could give petitioner, whose name was "Maes," as fair a trial as they could if his name were "Smith" or "Jones." No further objections were made and the jury was impaneled.

Petitioner did not present evidence concerning his racial background. At the conclusion of all of the evidence, the district attorney moved for a mistrial based upon the alleged impropriety of the racial questions asked by defense counsel during voir dire examination and counsel's subsequent failure to present testimony concerning petitioner's racial background.

Defense counsel initially consented to the mistrial and the court granted the district attorney's motion. However, approximately fifteen minutes later, after consulting with petitioner, and before the jury trying the case had been discharged, defense counsel advised the court that petitioner did object to the granting of the mistrial. The court was asked to reconsider its ruling. It declined to do so and the jury was thereafter discharged.

Petitioner's subsequent motion to dismiss the case on the basis of double jeopardy was denied and this original proceeding was commenced.

The issue we are called upon to determine is whether the trial judge abused his discretion in granting a mistrial under the foregoing circumstances, so that retrying petitioner for the same offense would constitute double jeopardy in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article II, Section 18, of the Colorado Constitution.

The general rule is that a person is in jeopardy when he has been brought to trial on a valid indictment or information in a court of competent jurisdiction, and has been arraigned and has pleaded, and a jury has been impaneled and sworn to try the cause. *Krutka v. Spinuzzi,* 153 Colo. 115, 384 P.2d 928; *Menton v. Johns,* 151 Colo. 276, 377 P.2d 104; *Markiewicz v. Black,* 138 Colo. 128, 330 P.2d 539. Here, all of the foregoing tests of jeopardy exist. Additionally, both the prosecution and the defense presented their cases in full and rested. Clearly, petitioner's first trial placed him in jeopardy unless it can be stated under the circumstances that the trial court was legally justified in declaring a mistrial.

I.

The propriety of declaring a mistrial and requiring a defendant in a criminal case to go through a further trial to determine his guilt or innocence has been the subject of a multitude of cases. The most recent leading case, *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543, observes that courts generally have declined to formulate rules based on "categories of circumstances" which will permit or preclude retrials. In discussing this problem, the Court quoted from Justice Storey's opinion in *United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165:

"We think that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest neces-

sity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office. * * *"

The Court reaffirmed the doctrine of "manifest necessity" as laid down in *Perez, supra,* stating that "* * * [It] stands as a command to trial judges not to foreclose the defendant's option [to go to the jury and complete his trial] until a scrupulous exercise of sound judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. * * *"

This Court, in *Brown v. People,* 132 Colo. 561, 291 P.2d 680, and followed by *Falgout v. People,* 170 Colo. 32, 459 P.2d 572, and *Barriner v. District Court,* 174 Colo. 447, 484 P.2d 774, adopted the "manifest necessity" principle as the guiding standard by which the trial judge should exercise his discretion in determining whether to abort a trial for a cause which otherwise might defeat the "ends of justice." This Court summed up the principle in the term "legal justification" as a basis for declaring a mistrial. To be legally justified, the Court cautioned that "whimsical notion or frivolous impulse" would not amount to legal justification and that the cause for declaring a mistrial must be "substantial and real" although it need not be vital, such as might be a cause of reversible error. *Falgout v. People, supra; Brown v. People, supra.*

"* * * It need only be such as could affect, or might in some way or manner be considered as interfering with, retarding, or influencing, to even a slight degree, the administration of

honest, fair, even-handed justice to either, both, or any, of the parties to the proceeding. When it appears to the chancellor that such an irregularity prevails and when in the exercise of his sincere judgment he declares a mistrial, it must be said that he has fairly exercised his judicial discretion and that his action is properly and legally justified. * * *" *Brown v. People, supra.*

Applying the foregoing to the present case, we conclude that there was no manifest necessity to declare a mistrial under the attending circumstances and that to do so was without legal justification.

It is fundamental that petitioner was entitled to a fair trial by an impartial jury, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Sections 16 and 25, of the Colorado Constitution. *Groppi v. Wisconsin,* 400 U.S. 505, 91 S.Ct. 490, 27 L.Ed.2d 571; *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751. In *Irvin v. Dowd, supra,* the Court stated:

"* * * In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke, a juror must be as 'indifferent as he stands unsworne.' Co. Litt. 155b. His verdict must be based upon the evidence developed at trial. Cf. *Thompson v. City of Louisville,* 362 U.S. 199. This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies. It was so written into our law as early as 1807 by Chief Justice Marshall in 1 Burr's Trial 416 . . . ." That voir dire inquiry is permissible into matters of racial prejudice in the interest of obtaining a fair and impartial jury is undisputed. In *Aldridge v. United States,* 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054, Chief Justice Hughes, speaking for the Court, stated:

"The practice of permitting questions as to racial prejudice is not confined to any section of the country, and this fact attests the widespread sentiment that fairness demands such inquiries be allowed. * * *

\* \* \*

"The argument is advanced on behalf of the government that it would be detrimental to the administration of the law in the courts of the United States to allow questions to jurors as to racial or religious prejudices. We think that it would be far more injurious to permit it to be· thought that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualification were barred. No surer way could be devised to bring the processes of justice into disrepute."

The right to inquire on voir dire concerning prejudice against a person of a minority race has been reaffirmed in the following cases: *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759: *United States v. Carter,* 440 F.2d 1132 (6th Cir. 1971); *United States v. Gore,* 435 F.2d 1110 (4th Cir. 1970); *King v. United States,* 124 U.S. App. D.C. 138, 362 F.2d 968 (1966); *Frasier v. United States,* 267 F.2d 62 (1st Cir. 1959); *State v. Higgs,* 143 Conn. 138, 120 A.2d 152; *Comm. v. Foster,* 293 A.2d 94 (Del.); *Matthews v. State,* 276 A.2d 265 (Del.); *Tunstall v. State,* 12 Md. App. 723, 280 A.2d 275; *Smith v. Maryland,* 12 Md. App. 130, 277 A.2d 622.

 It was counsel's duty to make diligent inquiry into the existence of potential prejudice that might exist in the jurors' minds by reason of petitioner's racial heritage. We find nothing in the record to justify the district attorney's argument that such questions were a "* * * blatant attempt, a deliberate attempt, to elicit sympathy and produce in the minds of the jury certain attitudes and opinions that will prevent them from reaching a fair and impartial verdict." On the contrary, the question objected to, which was the apparent basis for the declaration of a mistrial, was reasonably framed as a legitimate inquiry into a permissible area of potential bias and prejudice.

## II.

 The district attorney argues that, nevertheless, the petitioner consented to the declaration of the mistrial and he thereby waived his constitutional protection against double jeopardy. True, initially, defense counsel did not

object to the court granting the mistrial. However, the record is clear that petitioner changed his mind, and counsel re-stated his position to the contrary, objecting to the premature termination of the trial, before the jury had been discharged. We do not read into these circumstances an irretrievable binding consent to a mistrial and a waiver of the constitutional protection against double jeopardy. Had the court acted upon the initial position taken by defense counsel and discharged the jury, a different result would have obtained. As we view the trial court's determination, we find it lacking in the "scrupulous exercise of judicial discretion" that would lead to a conclusion that the ends of justice would not be served by a continuation of the trial. *United States v. Jorn, supra.*

Since we conclude that petitioner was once in jeopardy, the trial court is precluded from re-trying petitioner on the same charges.

The rule is made absolute.