No. 25776

**Andrew Espinoza and Daisy Salazar v. The District Court in and for the County of Conejos, State of Colorado, Honorable Dean C. Mabry, District Judge, Robert W. Ogburn, District Attorney for the 12th Judicial District, State of Colorado.**

(506 P.2d 131)

Decided February 5, 1973.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, John C. McClure, Deputy, for petitioners.

Robert W. Ogburn, District Attorney for the Twelfth Judicial District, for respondents.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

██ This is an original proceeding in which we issued a rule to show cause why the respondents should not be prohibited from retrying the petitioners on criminal charges. In the first trial, the respondent judge declared a mistrial sua sponte during the course of a defense attorney's closing argument. The respondents now intend to proceed with the second trial and the petitioners claim that a second trial should be barred because it would be in violation of the constitutional prohibition against double jeopardy. The matter is now at issue and after having considered the merits of the controversy, we make the rule absolute. To expose these defendants to a second trial under the facts here would constitute double jeopardy. Therefore, we order that the respondents be prohibited from proceeding to another trial.

Petitioners were charged with rape and conspiracy to commit rape and brought to trial before a jury. Petitioner Espinoza was represented by private counsel and Petitioner Salazar was represented by the public defender.

During the course of the trial while the public defender was engaged in cross-examination of a prosecution witness, the respondent judge stopped the cross-examination and instructed counsel to proceed to chambers. The respondent judge during the conference in chambers warned defense counsel about making speeches to the jury during cross-examination and that if it occurred again, a mistrial would be declared and sanctions would be imposed against defense counsel. The question which precipitated the judge's concern occurred during the cross-examination of the alleged victim. It involved occurrences after the alleged commission of the rapes when the victim was returned to town and when her father was observed in another car. The question as shown from the record was:

"Q. And at that time Andrew, who was siphoning gas out of

the car — Toastie Barela's car — he wasn't stealing gas or anything, he then walked up to your dad — "

The respondent judge also complained about the delays involved in the trial and then remarked "I don't know what you are trying to do, but I am going to leave here at noon tomorrow. That's how much time we have allotted to the case, 2 1/2 days, and then I am going to leave." There is no indication from the portions of the record before us that the district attorney made any objection regarding the manner in which defense counsel was cross-examining witnesses. The foregoing occurred on the second full day of trial.

On the following day, after the conclusion of testimony, and after the district attorney had completed his closing argument to the jury, the public defender proceeded with his closing argument on behalf of both of the petitioners. From the record, it is estimated that about 30 minutes of argument had elapsed when the respondent judge halted the argument and directed counsel to his chambers. The following pertinent colloquy between the respondent judge and the public defender then took place in chambers:

"BY THE COURT:
Mr. McClure, I say this advisedly and coolly and calmly. I have never heard a more distorted speech to the jury, one that was more intended to inflame them. I will not stand for it.
This will be a mistrial based upon your remarks to the jury so far. I had intended to let them go to the conclusion, but they can't go any further. I just can't. Plus the fact that you have based your whole case upon the credibility of the complaining witness.
"BY MR. McCLURE: [Public Defender]
No, I haven't, your Honor.
"BY THE COURT:
Yes, you have. That's what you said in your statement. Now, please let me finish, if you would, please.
And then your witness yesterday attacked an indirect way that you couldn't get in, her credibility and I almost gave a mistrial then, and I should have. This is also part of the

reason. There was a reaction from the jury. I heard a reaction at that particular moment and I should have declared a mistrial then.

"BY MR. GREEN: [District Attorney]

If the Court please, I would like the record to show that The People, with all deference to the Court's opinion, would like for this case — after it has gone this far and with only a short time to go — to let it go to the jury."

From this and the other comments, it appears that the judge's concern here centered about the public defender's closing statements to the jury that certain physical evidence that would have corroborated the alleged victim's story had not been presented in the trial. Specifically, the public defender commented that the prosecution had not introduced bloody, torn panties, or a broken zipper, which would have suggested forcible rape.

At this point, it appears from the record that the respondent judge retreated from his previous declaration of a mistrial and agreed that the defense argument could continue but he threatened that if the public defender's argument "crossed the line," he would declare a mistrial and jail the public defender for contempt of court. The public defender repeatedly requested the respondent judge to explain what standards he was imposing in determining when and if he "crossed the line." Such delineation, however, was never explained by the respondent judge. The public defender then indicated to the judge that because of the chilling effect of the judge's warnings to him, he was fearful that he could not effectively argue to the jury. Nevertheless, the public defender stated to the court that if the trial continued, he intended to argue along the same general lines as previously because he believed his arguments were entirely proper. The respondent judge. thereupon declared a mistrial and terminated the proceedings. Several times prior to the final declaration of mistrial, the district attorney urged the respondent judge to permit the case to go to the jury.

The record contains affidavits by the public defender and by an investigator of the public defender's office that after

the jury had been discharged, each of them discussed the case with the jurors and one alternate, and that 12 of the 13 jurors indicated that they had a reasonable doubt as to the guilt of the petitioners herein.

■ The general rule is that a person is in "jeopardy" when he has been brought to trial on a valid indictment or information in a court of competent jurisdiction, has been arraigned and has pleaded, and a jury has been impaneled and sworn to try the cause. Here, all of the foregoing prerequisites of jeopardy have been met. Clearly, petitioners' first trial placed them in jeopardy unless it can be stated under the circumstances that the trial court was legally justified in declaring a mistrial. *Maes v. District Court,* 180 Colo. 169, 503 P.2d 621 (1972).

■ As to what constitutes legal justification for mistrial, this court has adopted the United States Supreme Court doctrine of "manifest necessity." This doctrine stands as a command to trial judges not to foreclose the defendant's option to go to the jury and complete his trial unless a scrupulous exercise of sound judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).

Having carefully examined all the alleged reasons given for the mistrial both by the respondent judge in the record and by the respondent district attorney in his answer brief, we find they all fail the above test for legal justification in that they were either completely proper actions by the public defender or involved at most only minor improprieties. Our foregoing conclusion is obviously the same as the district attorney's appraisal of the public defender's conduct and oral argument because he interposed no objection to that particular conduct or defense argument.

In *Maes, supra,* we declared that in such situations, where there was no legal justification, double jeopardy attaches. If anything, the facts of the instant case are even more

persuasive than in *Maes* in demonstrating the utter lack of legal justification for declaring a mistrial.

■ Other jurisdictions have reached similar conclusions on double jeopardy in remarkably similar factual situations. As an example, in *United States v. Whitlow,* 110 F. Supp. 871 (D.D.C. 1953), the judge stopped the trial and ordered a mistrial on his own motion because of improper conduct of defense counsel in that he carried the examination of one of the witnesses beyond the limit which the judge had set. On these facts, it was held in *Whitlow* that:

"Minor misconduct of defense counsel, such as over-stepping the limit set by the court for the examination of a witness, does not under the authorities warrant a mistrial thereby depriving the defendant of his right to secure a verdict from the jury that had been sworn to try him."

Accordingly, we order that the respondents are precluded from retrying petitioners and the respondent court is directed to dismiss the charges.

The rule is made absolute.

MR. JUSTICE KELLEY does not participate.