**No. 26114**

**The People of the State of Colorado v. Howard Lincoln Terry**

(538 P.2d 466)

Decided July 21, 1975.

J. E. Losavio, Jr., District Attorney, Donald M. Hoerl, Assistant, Cecil L. Turner, Assistant, for plaintiff-appellant.

Bollinger, Flick & Young, Tuck Young, for defendant-appellee.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The defendant Howard Lincoln Terry, also known as Dr. H. L. Terry, was charged with feloniously making and uttering a false and forged prescription for Isonipecaine (Demerol), and with making false statements in the prescription. At the close of the People's case, the judge granted the defendant's motion for acquittal. This appeal by the People is (1) from the court's ruling that a certain prescription and certain testimony concerning the same were inadmissible in evidence because they were the "fruit of the poisonous tree" (the poisonous tree being an admittedly invalid search warrant); and (2) from the court's order denying the district attorney time within which to take an interlocutory appeal to this court. We approve of the rulings.

According to an offer of proof of the prosecutor the following incidents transpired on July 17, 1972: A woman, known to the pharmacist as Marlies Ragulsky, entered the Economy Drug Store in Pueblo. She presented a prescription on a form bearing the name of H. L. Terry, M. D. and purportedly signed by him, dated July 16, 1972, for Demerol tablets for Joyce Cook. The pharmacist attempted to detain her until he could call Dr. Terry, but she demanded a return of the prescription. He returned it to her after making a photographic copy, which photographic copy was tendered in evidence and is a part of the record.

As a result of the foregoing, the authorities sought to prosecute Marlies Ragulsky, and we gather from the record that a charge was made against her.

Captain Hurley of the Pueblo Police Department testified that he called on Dr. Terry on July 18, 1972, in connection with the investigation concerning the Ragulsky case; that Dr. Terry told him that he had no patient by the name of Joyce Cook; that he had not written any prescription on July 16, 1972; and that specifically on that day he had not written one for Demerol for Joyce Cook.

The present district attorney was first sworn into office on January 9, 1973. Prior to January 4, 1973 he had engaged as deputy or as investigators Jane Freeman, Joseph A. Koncilja and Rodney Cozzetto. All three testified at the hearing on defendant's motion to suppress. The two men testified *in camera* as an offer of proof at the trial. On January 4, 1973, in preparation for the Ragulsky case, these three called on Dr. Terry. They all testified that Dr. Terry showed them a copy of a prescription dated July 16, 1972, prepared for Joyce Cook and signed by Dr. Terry. They testified that it appeared to be identical to the copy made by the pharmacist at the Economy Drug Store.

The three immediately made a report to Captain Hurley, who in turn executed an affidavit upon which a search warrant issued for seizure of the copy of the prescription in Dr. Terry's office. The copy in Dr. Terry's possession was seized under the warrant the same day. As already mentioned, the affidavit was insufficient to support the warrant, and the warrant admittedly was invalid.

On the back of the copy seized was the notation "Grove — W. 4th". This led the law enforcement people to conclude that the Grove Drug Store at 726 East 4th Street probably was involved. The next day they went to this drug store and found that the original of the prescription had been filled there on July 19, 1972. The defendant was charged as above set forth.

The defendant filed motions to suppress, among other things, the carbon copy of the prescription seized under the search warrant and all other evidence derived from information gained during the search and seizure under the warrant. The court ruled that the affidavit upon which the warrant was predicated was fatally defective and that the copy of the prescription seized at Dr. Terry's office be suppressed.

The motions to suppress and the court's order did not relate to the original of the prescription located at the Grove Drug Store. On the day of trial the prosecutor asked that the court clarify the extent of the earlier suppression order, and he asked for a hearing in this respect. He stated:

"Now, there was certain evidence seized after the prescription was taken *and without indicating at this point what that evidence was*, we feel that although the prescription could well have led to the seizure of that property, that it did not, and that there was an independent source for discovery of those items; and at one point there was — they were in the process of seizing that evidence." (Emphasis added)

The prosecutor stated that, if upon a hearing the ruling were adverse to the People, he would seek an interlocutory appeal. The court declined to hold a hearing and ordered that the admissibility of any evidence not already suppressed would be determined when the evidence would be offered at trial.

## I.

Thirty-six days elapsed from the time the court ordered the evidence suppressed and the day of trial. For the prosecutor on the day of trial to request a hearing upon the admissibility of evidence, but state that he was not disclosing what the evidence was, is simply unthinkable and preposterous. Other reasons occur to us as to why it was not error to hold a hearing in order that, upon an adverse ruling, the district attorney might have an interlocutory appeal — but this strategy of non-disclosure even on the trial date constitutes such a lack of good faith on the part of the district attorney that we proceed no further with the issue. We grant that, if the defendant could be retried as a result of reversible error, we would probably go into this matter in more depth. But, as later discussed, he has been in jeopardy and cannot again be placed thereunder.

## II.

The case proceeded to trial. Defense objections to certain evidence were soon made and sustained. The prosecutor asked to make an offer of proof. The court held an *in camera* hearing and the offer consisted of the testimony of Captain Hurley, Koncilja, Cozzetto, and the pharmacist at the Grove Drug and Joyce Cook. The court ruled that the original pre-

scription filled at Grove Drug and testimony concerning the filling of it there were inadmissible, being the "fruit of the poisonous tree" since the authorities obtained information about Grove Drug from the copy of the prescription illegally seized under the search warrant, in effect following *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

The People, on the other hand, contend that the district attorney's representatives obtained their information concerning the filling of the prescription at Grove Drug at the conference of the three with Dr. Terry on January 4, 1973, prior to the issuance of the search warrant. If this were the fact, we would agree with the People in the position that

"facts learned as a result of information obtained in an illegal search and seizure do not become sacred and inaccessible by reason of such illegality, and . . . if knowledge of them is gained from an independent source, they may be proved like any others." 43 A.L.R.2d 399 citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed. 319 (1920).

To the same effect are *Smith v. United States*, 402 F.2d 771 (9th Cir. 1968); *Green v. United States*, 386 F.2d 953 (10th Cir. 1967); and *Burke v. United States*, 328 F.2d 399 (1st Cir. 1964). The court, however, made its ruling on the basis that the information concerning the Grove Drug Store was obtained from the copy of the prescription illegally seized, and was not obtained from the independent source of the meeting of the three with Dr. Terry on January 4, 1972, prior to the issuance of the search warrant.

At the hearing on motions to suppress and other motions on April 4, 1973, there was evidence to the effect that the district attorney's representatives did not learn of the connection with Grove Drug at the first meeting with Dr. Terry on January 4, 1973. There was testimony at the *in camera* hearing that the three did learn of Grove Drug at the first meeting of January 4th. The effect of the court's finding is that it believed the testimony at the suppression hearing and disbelieved that at the *in camera* hearing. The trial judge is the judge of credibility, and it is not the function of an appellate court to indulge in the art of second guessing.

### III.

In his brief the district attorney makes the following rather amazing statement:

"Under Article II, Section 18 of the Constitution of the State of Colorado no person shall be put in jeopardy for the same offense. This section also provides that if a prior judgment be reversed for error in law, the accused shall not be deemed in jeopardy."

The district attorney contends that the defendant can be retried. The second sentence obviously applies to a case in which the defendant has been convicted and has appealed. From the time the jury is sworn in this case, the defendant was in jeopardy. The only distinction between this case and *Krutka v. Spinuzzi*, 153 Colo. 115, 384 P.2d 928 (1963), is that in

*Krutka* the court directed a verdict and here the court granted a motion for judgment of acquittal. It is a distinction without a difference. Even if we found that the court committed reversible error in this case, the defendant could not be retried.

Judgment affirmed.