## No. 27112

**The People of the State of Colorado v. Raymond Cruz Baca, a/k/a Raymond Cruz "Cornbread" Baca, a/k/a Ray Baca, a/k/a Ray Cruz Baca**

(562 P.2d 411)

Decided March 21, 1977.                    Rehearing denied April 25, 1977.

J. E. Losavio, Jr., District Attorney, Patricia W. Robb, Deputy, Warren T. Marshall, Deputy, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Carol L. Gerstl, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This case presents the question of whether a mistrial, occasioned by the misconduct of the prosecutor and granted at the instance of and pursuant to a defense motion, can provide the basis for a claim of double jeopardy upon retrial of the defendant.

The defendant was convicted of the murder of Leroy Romero. In the course of an earlier trial on the same charge, the prosecutor called a witness in rebuttal and sought to obtain certain testimony from her regarding an attempt by the defendant to persuade her to commit perjury. An

objection was made, and an *in camera* hearing followed. At the conclusion of the hearing, the district attorney was advised as to the proper method and the foundation which was necessary to secure the witness' testimony. He advised the court that he would proceed on that basis, but instead he released the witness. The defendant, thereupon, moved for a mistrial, and the court granted the motion "because of the inferences and innuendos obvious in the District Attorney's questioning of the witness." In particular, the trial court found that it was the prosecutor's "abandoning of the effort to question [the witness] further that . . . causes the difficulty and is . . . prejudicial."

When the case was brought to trial for a second time, the defendant claimed double jeopardy.[1] The trial court denied his motion to dismiss, ruling that "it would be illogical to allow a defendant to actively seek a mistrial and by so doing, thereafter prevent any trial at all." We find this test to be incomplete.

Two related considerations lie at the heart of the double jeopardy clause of the Fifth Amendment. One focuses upon the impropriety of giving the government repeated chances to secure a conviction:

"[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

*United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), *quoting Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *accord, United States v. Wilson*, 534 F.2d 76 (6th Cir. 1976); *United States v. Kessler*, 530 F.2d 1246 (5th Cir. 1976). The other consideration embraces the defendant's "valued right to have his trial completed by a particular tribunal." *United States v. Dinitz, supra; Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

Balanced against this solicitude for the defendant is a legitimate concern for the "public's interest in fair trials designed to end in just

---

[1] It is uncontested that "jeopardy" had attached in this case. *See People v. Terry*, 189 Colo. 177, 538 P.2d 466 (1975) (jeopardy attaches when jury sworn); *People v. Garner*, 187 Colo. 294, 530 P.2d 496 (1975) (jurisdictional defect of improper information negates attachment of jeopardy); *People v. King*, 181 Colo. 439, 510 P.2d 333 (1973); *Espinoza v. District Court*, 180 Colo. 391, 506 P.2d 131 (1973); *Maes v. District Court*, 180 Colo. 169, 503 P.2d 621 (1972). However, "in cases in which a mistrial has been declared prior to verdict, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). *Colo. Const.*, Art. II, Sec. 18.

judgments." *Wade v. Hunter, supra; see Barriner v. District Court,* 174 Colo. 447, 484 P.2d 774 (1971). As a means of reaching this balance, the doctrine of "manifest necessity" was designed to guide the trial court's broad discretion in declaring a mistrial *over the objection of the defendant.* Because a mistrial effectively negates the defendant's interest in seeing his prosecution carried forth to a verdict by a particular jury, use of the device is allowed only where manifestly necessary or "legally justified" to preserve the public interest in fair trials on both sides.[2] *See Espinoza v. District Court,* 180 Colo. 391, 506 P.2d 131 (1973); *Maes v. District Court,* 180 Colo. 169, 503 P.2d 621 (1972). Failure to predicate a mistrial upon such a standard results in a bar against subsequent retrial of the defendant. *See United States v. Dinitz, supra; Illinois v. Somerville, supra; United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); *Espinoza v. District Court, supra; Maes v. District Court, supra.* The crux of this doctrine is simply that, where "manifest necessity" is demonstrated, the public interest in a fair trial and a just verdict outweighs the defendant's dual interests in proceeding to a verdict or avoiding retrial for the same offense. *See Illinois v. Somerville, supra; Espinoza v. District Court, supra.*

■ A completely different situation is presented, however, when the defendant moves for, or consents to, a mistrial. *See United States v. Sanford,* 429 U.S. 14, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976) ("If the mistrial is declared at the behest of the defendant, the manifest necessity test does not apply."); *United States v. Dinitz, supra* (different considerations than the "manifest necessity" standard apply when a mistrial is declared at the defendant's request). The defendant's motion for a mistrial is generally considered to operate as a waiver of the principle of "manifest necessity," which protects him from retrial under the double jeopardy clause.[3]

---

[2] The content of the term "manifest necessity" has been refined by precedent in some cases. *See, e.g., Sedgwick v. Superior Court,* 417 F.Supp. 386 (D. D.C. 1976) (noting generic situations of impossibility of impartial verdict, obvious procedural error making reversal a certainty, and hung jury); *McCoy v. District Court,* 156 Colo. 115, 397 P.2d 733 (1964) (hysteria in courtroom); *see also* section 18-1-301, C.R.S. 1973 (codifying some instances of "manifest necessity" under rubric of "improper termination"). Our courts have resisted the categorization of sufficient circumstances, however. *See Maes v. District Court, supra.* The general features of the concept have received less consistent treatment. *Compare Maes v. District Court, supra* (whimsical notion or frivolous impulse not sufficient legal justification for mistrial; basis *"must be substantial and real,"* though not vital in sense of reversible error) (emphasis added), *with Falgout v. People,* 170 Colo. 32, 459 P.2d 572 (1969), *and Brown v. People,* 132 Colo. 561, 291 P.2d 680 (1955) ("need only be such as *could affect,* or *might in some way or manner* be considered as interfering with, retarding, or influencing *to even a slight degree,* the administration of honest, fair, even-handed justice") (emphasis added).

[3] In *United States v. Dinitz, supra,* the Court refused to apply the waiver requirements of *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), to the double jeopardy context. The *Dinitz* Court rejected "the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends upon a knowing, voluntary and intelligent waiver." *See also Mahany v. People,* 31 Colo. 365, 73 P. 26 (1903) (double jeopardy may be waived by implication).

*See United States v. Dinitz, supra; Illinois v. Somerville, supra; United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

■ However, a caveat is tied to this general "waiver" rule which permits retrial after a defendant has successfully pursued a motion for a mistrial:

"[T]he traditional waiver concepts have little relevance where the defendant must determine whether or not to request or consent to mistrial in response to judicial or prosecutorial error.

* * * *

"The Double Jeopardy Clause does protect a defendant against governmental action *intended to provoke mistrial requests* and thereby subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where 'bad-faith conduct by the judge or prosecutor' threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." (Emphasis added.)

*United States v. Dinitz, supra, quoting United States v. Jorn, supra; accord, United States v. Wilson, supra; United States v. Kessler, supra.*[4]

■ The degree of "prosecutorial overreaching" required to sustain a double jeopardy claim over the defendant's successful mistrial motion has not been specifically delineated. *Cf. Illinois v. Sommerville, supra* (noting consistent rejection of such an approach in this area); *Maes v. District Court, supra* (courts decline to formulate rules based upon "categories of circumstances" which preclude retrials); *Barriner v. District Court, supra.* In *Dinitz,* the Court found no judicial overreaching in a trial judge's banishment of defendant's counsel from the courtroom, after that counsel had repeatedly defied the court's admonitions regarding the proper scope of an opening statement. The *Dinitz* Court found that, even assuming the trial judge had "overreacted," there was no basis for showing "that the judge's action was motivated by bad faith or undertaken to harass or prejudice the defendant." *United States v. Dinitz, supra.*

---

[4] To date, our courts have not been called upon to recognize or apply this corollary to the general waiver theory of a defendant's mistrial motion. Accordingly, general propositions in previous cases cannot be read as rejections of this rule. *See, e.g., Mahany v. District Court, supra; Worrell v. County Court,* 34 Colo.App. 401, 529 P.2d 654 (1974) (mistrial granted with defendant's consent and based upon incompetency of defendant's counsel held to constitute waiver). *See also United States v. Tateo, supra* ("If Tateo had *requested* a mistrial on the basis of the judge's comments, there would be no doubt that if he had been successful, the Government would not have been barred from retrying him.") (emphasis in original).

While other courts have considered both the objective indicia of prejudice to the defendant and the subjective motivation of the "overreaching" party, *see United States v. Kessler, supra*, we conclude that a standard based *solely* upon prejudicial effect would eliminate the distinction embodied in the rule.[5]

Accordingly, while the nature and gravity of the error may be relevant to the motivation of the party committing the error, or may give additional weight to a finding of bad faith the crucial focus must remain upon that motivation.

■ In the present case, the court found that, while the prosecutor's conduct in "abandoning" the line of questions and releasing the witness was prejudicial because of the unresolved innuendos it created, the prosecutor was, nonetheless, entitled to inquire into that area. Moreover, the prosecutor offered repeatedly to recall the witness. The jury, at the time, was unaware that the witness had been excused. There is no basis in the record for showing that the prosecution was attempting to save its case for another day by triggering a mistrial. In fact, the prosecution argued

---

[5] Although the *Dinitz* Court did speak peripherally in terms of "prejudicial error," two factors persuade us that a test based upon prejudicial impact alone is not constitutionally mandated. First, the *Dinitz* Court clearly emphasized the intent of the party committing the error as the index of whether a double jeopardy claim survives in this context. Second, the Court tacitly ackowledged the highly prejudicial impact of banishing a defendant's counsel from the courtroom, and yet refused to allow the double jeopardy claim because:

". . . here the trial judge's banishment of Wagner from the proceedings was not done in bad faith in order to goad the respondent into requesting a mistrial or to prejudice his prospects for an acquittal."

To allow a standard based upon prejudice alone to guide results in this area would swallow the very "waiver" principle to which the overreaching doctrine serves as an exception. Some legitimate claim for prejudice lies behind every successful defense motion for a mistrial. That alone, however, is not sufficient to bar a retrial:

"[T]he defendant's double jeopardy interests, however defined, do not go so far as to compel society to so mobilize its decision-making resources that it will be prepared to assure the defendant a single proceeding free from harmful governmental or judicial error."

*United States v. Dinitz, supra, quoting United States v. Jorn, supra; accord, United States v. Tateo, supra.* The Court, in *United States v. Jorn, supra*, noted that "where circumstances develop *not attributable to prosecutorial or judicial overreaching*, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, *even if the defendant's motion is necessitated by prosecutorial or judicial error.*" (Emphasis added.) Finally, to the extent mere prejudice is a sufficient predicate for preservation of a double jeopardy claim in a defendant's motion for mistrial, the trial courts will be reluctant to grant mistrials because they "will understand that society will be better served by completing a trial, even after clear error has arisen and the defendant seeks the mistrial, than the alternative of a mistrial and the possible bar of double jeopardy based upon the error." *United States v. Dinitz, supra, quoting United States v. Dinitz*, 492 F.2d 53 (5th Cir. 1974) (Bell, J., dissenting); *accord, United States v. Tateo, supra; United States v. Williams*, 411 F.Supp. 854 (S.D.N.Y. 1976). Consistent with the principal standard of "overreaching" or "bad-faith," there may exist conditions of gross negligence, rather than actual intent, which meet this standard. *See United States v. Beasley*, 479 F.2d 1124 (5th Cir.), *cert. denied*, 414 U.S. 924, 94 S.Ct. 252, 38 L.Ed.2d 158 (1973); *United States v. Kessler, supra.* We construe our own constitutional protection against double jeopardy to be consistent with this positon. *See Colo. Const.* Art. II, § 18.

vigorously against the mistrial motion.

The record contains no indication of prosecutorial overreaching. The trial court's finding of prejudice as a basis for the mistrial is not enough to bar reprosecution of this defendant. While the trial court erred in considering the elements necessary to invoke a sustainable claim of double jeopardy protection, we find the error harmless. A correct result reached upon an erroneous analysis is not a basis for reversal. *Cf. Walker v. People*, 175 Colo. 173, 489 P.2d 584 (1971).

We find the defendant's other contentions to be without merit.

Accordingly, we affirm.

MR. CHIEF JUSTICE PRINGLE concurs in the result.

MR. JUSTICE GROVES specially concurring.

MR. JUSTICE GROVES specially concurring:

I can see no distinction between the second trial here and a situation in which the mistrial had not been granted, the defendant convicted and on appeal the case reversed for a new trial. After the preliminary statement in the opinion, I would simply state that.