In re the PEOPLE of the State
of Colorado, Plaintiff–
Respondent,

v.

Vernon BERRETH, Defendant–
Petitioner.

No. OOSA77.

Supreme Court of Colorado,
En Banc.

Nov. 14, 2000.

David J. Thomas, District Attorney, First Judicial District Donna Skinner Reed, Chief Appellate Deputy District Attorney Golden, CO, Attorneys for Plaintiff–Respondent.

Donald C. Goldy, Denver, CO, Charles S. Zeitz, Denver, CO, Attorneys for Defendant–Petitioner.

Chief Justice MULLARKEY delivered the Opinion of the Court.

In this original proceeding brought pursuant to C.A.R. 21, the defendant in a criminal case seeks review of the trial court's order declaring a mistrial in *People v. Berreth,* No. 99CR746 (Dist. Ct. Jefferson County, Feb. 15, 2000). Trial began in this case on February 1, 2000. Ten trial days later the court *sua sponte* ordered a mistrial based primarily on the trial judge's overloaded docket and the sudden unanticipated resignation of his division clerk. The defendant argues that the trial court erroneously declared a mistrial and that a second trial would violate his constitutional guarantee against double jeopardy.

We hold that the trial court erred in declaring a mistrial in this case and, consequently, the courts of this state are prevented from retrying the defendant based on the double jeopardy prohibitions of the Fifth and Fourteenth Amendments to the United States Constitution and article II, section 18 of the Colorado Constitution.

I.

The defendant Vernon Berreth ("Berreth") was the owner and manager of Mile–Hi Transmission in Arvada, Colorado. In August 1999, Berreth was indicted for seven separate felony charges under sections 18–17–104, 6 C.R.S. (1999)(Organized Crime); 18–4–401, 6 C.R.S. (1999)(Theft); 18–2–201, 6 C.R.S. (1999)(Conspiracy to Commit Theft); and 18–5–102, 6 C.R.S. (1999)(Forgery) for allegedly participating in an illegal racketeering scheme.

Berreth pled not guilty to the charges. His trial began on February 1, 2000, and continued for nine days over the next two weeks. The jury was selected and sworn, and the prosecution presented its case in chief. The prosecution had not completed presenting its case when the trial recessed for the weekend on Friday, February 11, 2000. Trial was scheduled to resume on Tuesday, February 15, 2000. However, when the trial judge called the case on that day, he *sua sponte* declared a mistrial.

The trial judge based his mistrial declaration on serious staffing problems in his court and on the slow pace of the trial:

> The court would note in this matter that the division clerk that the court had hired quit last night and simply walked off the job and gave the court no notice whatsoever, and so I'm without a division clerk ... [a]nd I probably have in the vicinity of 200 files sitting on the division clerk's desk that either need immediate action or prompt action of some nature .... [W]hat the court is saying is, is that either I'm going to have to mistry the matter or this division of the court is just going to completely fall apart ... [so] in order to keep this court up and running and to avoid a complete collapse ... the court is going to sua sponte declare a mistrial in the case and reset this so this division can get organized and back hopefully on track.... [T]here simply is no alternative.... I mean, I think it is manifest necessity.[1]

1. The trial judge's division clerk is his chief administrative assistant, who is responsible for processing the court's files. This includes monitoring and scheduling the court's docket, entering the court's orders, and notifying parties of the court's action.

The trial judge also emphasized that the trial was taking much longer than the parties originally anticipated, and that the length of the trial "distressed" the jurors:

> [T]his jury is highly distressed over the fact that they were told that 10 days of service would be needed, and now we're talking about closer to 20 days of service and four weeks out of their lives that they didn't anticipate.

The court concluded that it had no available alternative, and announced a mistrial over defense counsel's objection.

After declaring a mistrial, the district court rescheduled Berreth's trial for four weeks beginning on May 11, 2000. On March 16, 2000, Berreth filed a petition in this court asking us to prohibit the commencement of a new trial on double jeopardy grounds.

We granted review in this case and we now make our rule absolute. We hold that because the trial court's basis for declaring a mistrial did not meet the constitutional standard of "manifest necessity," double jeopardy bars retrial of the defendant. We order the district court to dismiss this case.

## II.

Berreth argues that the proceedings conducted in his case trigger the double jeopardy bar and prevent any subsequent prosecution of the charges against him. We agree.

■ Double jeopardy is a constitutional guarantee prohibiting the retrial of a defendant who already has been tried for the same offense. The Fifth Amendment of the United States Constitution provides that no person "shall ... be subject for the same offence to be twice put in jeopardy of life or limb," and is made applicable to the states through the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Likewise, the Colorado Constitution provides that "nor shall any person be twice put in jeopardy for the same offense." *See* Colo. Const. art. II, § 18. Double jeopardy addresses the basic concern that a government should not be allowed "repeated chances to obtain a conviction of an accused." *People v. Schwartz*, 678 P.2d 1000, 1010 (Colo.1984). In addition, it protects a defendant's right to have a verdict returned by a particular jury. *See id.* at 1010–11;

*People v. Espinoza*, 666 P.2d 555, 558 (Colo. 1983).

■ In general, the double jeopardy prohibition is implicated if a defendant is arraigned, enters a plea, is brought to trial in a court of competent jurisdiction, and a jury has been selected and sworn to hear the case. *See Maes v. District Court*, 180 Colo. 169, 173, 503 P.2d 621, 623 (1972); *see also Barela v. People*, 826 P.2d 1249, 1254 (Colo.1992)(finding that the jury must be both impaneled and sworn in order for jeopardy to attach). In the present case, Berreth had been arraigned and pled not guilty, the jury had been selected and sworn, and the presentation of the evidence had begun. Thus, there is no dispute that jeopardy had attached by the time the trial judge declared a mistrial. However, in this type of case, a finding that jeopardy has attached is only the beginning of the inquiry. *See People v. Baca*, 193 Colo. 9, 11 n. 1, 562 P.2d 411, 412 n. 1 (1977).

■ If a criminal trial is terminated prior to its completion, double jeopardy will bar a second trial unless the trial court has sufficient legal justification for declaring a mistrial over the defendant's objection. *See Baca*, 193 Colo. at 12, 562 P.2d at 412–13; *Maes*, 180 Colo. at 174, 503 P.2d at 624. Such justification exists only if, under all the circumstances of the case, there is a "manifest necessity" for the mistrial. *See, e.g., Schwartz*, 678 P.2d at 1011 (citing *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)).

■ The Supreme Court in *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), explained that the "manifest necessity" doctrine bars a trial judge from declaring a mistrial over the defendant's objection unless "a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Jorn*, 400 U.S. at 485, 91 S.Ct. 547 (*quoted in Maes*, 180 Colo. at 174, 503 P.2d at 624). This "manifest necessity" standard clearly prohibits a trial court from declaring a mistrial based on a "whimsical notion or frivolous impulse." *Maes*, 180 Colo. at 174, 503 P.2d at

624 (quoting *Brown v. People*, 132 Colo. 561, 568, 291 P.2d 680, 683–84 (1955)). The basis for declaring a mistrial must be "substantial and real," such that continuing with the trial would interfere with or retard the "administration of honest, fair, even-handed justice to either, both, or any, of the parties to the proceeding." *People v. Castro*, 657 P.2d 932, 942 (Colo.1983)(quoting *Brown*, 132 Colo. at 569, 291 P.2d at 684).

It is impossible for a reviewing court to list a concrete set of situations that automatically justify declaring a mistrial. *See Baca*, 193 Colo. at 12 n. 2, 562 P.2d at 413 n. 2; *Maes*, 180 Colo. at 173–74, 503 P.2d at 623–24. Colorado's criminal code, however, does provide specific grounds for mistrial in cases where the trial court finds that:

(I) The termination is necessary because it is physically impossible to proceed with the trial in conformity with the law; or (II) There is a legal defect in the proceedings that would make any judgment entered upon a verdict reversible as a matter of law; or (III) Prejudicial conduct has occurred in or outside the courtroom making it unjust either to the defendant or to the state to proceed with the trial; or (IV) The jury is unable to agree upon a verdict; or (V) False statements of a juror on voir dire prevent a fair trial.

§ 18–1–301(2)(b), 6 C.R.S. (2000). Although this list is not definitive, Colorado courts generally have upheld declarations of mistrial only in these or similar situations. *See, e.g., Harris v. People*, 888 P.2d 259, 264 (Colo.1995)(prosecutorial misconduct can be a valid basis for declaring a mistrial); *Schwartz*, 678 P.2d at 1011 (jury deadlock); *Castro*, 657 P.2d at 942–43 (sudden hospitalization of person who was both the victim of and principal eyewitness to the shooting in the case); *People v. Bastardo*, 191 Colo. 521, 525, 554 P.2d 297, 301 (1976)(lack of candor

on the part of one of the jurors during voir dire); *People v. Urrutia*, 893 P.2d 1338, 1344 (Colo.App.1994)(jury deadlock).[2]

█ These cases illustrate the gravity of circumstances needed to justify a mistrial. Thus, both case law and statutory criteria show that circumstances must be serious and outside the control of the trial court in order to justify a finding of "manifest necessity."

█ In this case, the People argue that the abrupt departure of the division clerk is analogous to cases where a mistrial was declared due to circumstances beyond the court's control, such as the sudden illness of a judge. They rely on the holding in *United States v. Lynch*, 598 F.2d 132 (D.C.Cir.1978), claiming that it supports the trial judge's basis for declaring a mistrial in this case. In *Lynch*, the trial judge presiding over the case fell ill, and the chief judge was unable to find a replacement judge among the active judges of the court. On appeal, the court upheld the trial court's declaration of mistrial based on "manifest necessity," finding that "the illness of a judge is an exigency which may support the declaration of mistrial and a finding of manifest necessity." *Lynch*, 598 F.2d at 135. Although there are numerous cases supporting a finding of "manifest necessity" in cases where a judge becomes ill, these cases are inapplicable to the situation here.

The circumstances of the case at hand do not meet the statutory criteria mentioned above, and do not fall into the same category as those cases that involve serious situations outside the trial court's control. Rather, this case is comparable to cases where a mistrial was declared based on circumstances within the court's control. Although there are no cases in our jurisdiction involving a situation similar to Berreth's, cases in other jurisdic-

---

2. Other jurisdictions have found "manifest necessity" only in limited situations such as

the illness of a juror, counsel, the trial judge, or the defendant; the absence of a juror; the illness or death of a member of a juror's family; the service of a juror on the grand jury which indicted the defendant; false statements of a juror on voir dire which prevent defendant from obtaining a fair trial; the improper separation of the jury; the assassination of the President of the United States on the first day

of trial; a remark or comment by counsel or the trial judge which is so prejudicial as to prevent defendant from obtaining a fair trial; the newspaper publication of a letter which would render jury impartiality doubtful; the inability of the jury to agree upon a verdict; or the dismissal of an indictment which is so defective that it could not have supported a judgment on the verdict.

1 Charles E. Torcia, *Wharton's Criminal Law* § 62 (15th ed.1993).

tions that involve analogous facts have held that a declaration of a mistrial in such a situation is an abuse of discretion. *See, e.g., People v. Michael,* 48 N.Y.2d 1, 420 N.Y.S.2d 371, 394 N.E.2d 1134, 1138 (1979)(finding no "manifest necessity" where mistrial declared due to the absence of the defendant's attorney because of a death in the family and the court's belief that the trial had to terminate by the end of the week because the court and several jury members had vacation plans); *Commonwealth v. Wideman,* 453 Pa. 119, 306 A.2d 894, 895–96 (1973)(holding "manifest necessity" does not justify a mistrial based on court convenience, where trial was running beyond visiting judge's last day of assignment and judge had previous commitments that interfered with the delay).

These cases show that a mistrial cannot be based primarily on circumstances that are within the trial court's control and under its supervision. In the present case, the trial judge's order was based on the facts that a key staff member resigned, the docket was crowded, and the trial ran longer than was anticipated. We are not unsympathetic to the dilemma caused by these circumstances. This chain of events illustrates some of the very real difficulties facing district judges with heavy dockets and limited staff resources. We cannot conclude from this, however, that the mistrial was compelled by forces beyond the trial judge's control and that to continue the trial would have been contrary to the fair administration of justice. Thus, the court's reasons for declaring a mistrial in this case were not substantial enough to warrant a finding of "manifest necessity." In and of themselves, these difficulties should not have affected the "administration of honest, fair, even-handed justice to either, both, or any, of the parties to the proceeding." *See Castro,* 657 P.2d at 942.

The People also argue that the major reason for the mistrial was delay in the trial caused by defense counsel. The trial originally was scheduled for ten days but appeared to be taking twice as long. Even if the slow pace of the trial was the prime reason for the mistrial, it is the trial court's responsibility to manage the case. Such management includes setting reasonable controls on the attorneys trying the case. There is nothing in the record before us that would support declaring a mistrial as a sanction for defense counsel's misconduct.

In conclusion, even though the unexpected loss of a key staff member was a severe blow to the trial judge, it had no relation to this case other than a timing coincidence. We cannot accept the trial court's reasoning that this case had to be mistried so that the many other matters on the court's docket could be addressed. Double jeopardy principles do not allow us to decide that a particular case is not worthy of protection or that one case must be sacrificed for the good of all cases. The trial court's mistrial order was not justified by "manifest necessity" and must be reversed.

### III.

For the reasons stated above, we conclude that the trial court erroneously applied the "manifest necessity" standard. We make our rule absolute and order the district court to dismiss this case.