Petitioner: Robert M. BOVARD,

v.

Respondent: The PEOPLE of the State of Colorado.

No. 04SC4.

Supreme Court of Colorado, En Banc.

Oct. 18, 2004.

Springer & Steinberg, P.C., Harvey A. Steinberg, Michael P. Zwiebel, Denver, for Petitioner.

Thomas R. Raynes, District Attorney, Geoffrey R. Nims, Deputy District Attorney, Gunnison, for Respondent.

KOURLIS, Justice.

Robert M. Bovard, the criminal defendant in the underlying prosecution, petitioned for review of the court of appeals determination in *People v. Bovard,* 87 P.3d 215 (Colo.App. 2003). In that case, the court of appeals concluded that it lacked subject matter jurisdiction over Bovard's appeal of the final judgment of the district court entered on a jury verdict convicting him of driving under the influence of alcohol. The court of appeals refused to address the merits of Bovard's appeal because it concluded that section 13–6–310, C.R.S. (2004) provides that further appeals from the final judgment of a district court, in a case appealed from a county court, are only by writ of certiorari.

Bovard was initially convicted in the Gunnison County Court following the court's partial denial of his motion to suppress statements and other evidence obtained during his initial contact with police. The county court issued its order without the benefit of the record of the suppression hearing because the tape had been misplaced. Bovard appealed his conviction to the district court, which ultimately tried the case de novo due to the lack of a record from the county court. The district court entered final judgment on a new jury verdict convicting Bovard of driving under the influence of alcohol. His appeal to the court of appeals followed.

■ We granted certiorari to determine whether the court of appeals erred in concluding that section 13–6–310 limited Bovard to his appeal from the county court to the district court, and that any further review would be by certiorari only. We now hold that section 13–6–310 governs only the district court's appellate jurisdiction, which arises when the court bases its ruling on the county court record. Accordingly, when the district court operates within the sphere of its trial court authority by conducting a trial de novo, the defendant has an appeal of right to the court of appeals from the final judgment of the district court. We therefore reverse the court of appeals' dismissal of Bovard's appeal and remand the case to that court for consideration of the substantive issues.

## I. Facts and Procedural History

On October 22, 1998, Robert M. Bovard was arrested and charged in Gunnison County with one count of driving under the influence of alcohol,[1] and two counts of failure to stop as required at a stop sign.[2] The matter was set for jury trial in the Gunnison County Court.[3]

On March 8, 1999, Bovard moved to suppress statements he made to the arresting officer, evidence obtained from his person and vehicle at the scene, the results of his roadside sobriety and breath tests, and the arresting officer's observations of his physical appearance. A tape-recorded suppression hearing was held on July 30, 1999, with

1. § 42–4–1301, C.R.S. (2004).

2. § 42–4–703, C.R.S. (2004).

3. *See* §§ 42–4–1705 & 1707, C.R.S. (2004) (governing county court jurisdiction in certain traffic matters).

the arresting officer as the lone testifying witness.[4]

On August 20, 1999, the court informed the parties that the tapes of the hearing had been misplaced, and invited both sides to respond accordingly, by August 30, 1999. Neither the People nor Bovard responded. On September 15, 1999, the court issued an order partially granting and partially denying Bovard's motion to suppress. It denied the motion concerning all physical evidence obtained during the stop but suppressed Bovard's statements.

The court also denied Bovard's motion for rehearing, and the case went to a jury trial on September 29, 1999. At the close of the People's case, the court dismissed the failure to stop charges for insufficient evidence. The jury convicted Bovard of the driving under the influence charge.

On February 28, 2000, Bovard appealed his conviction to the Gunnison County District Court, challenging the county court order denying his motion to suppress. Later, he filed an unopposed motion requesting that the case be retried in district court because of the misplaced suppression hearing tape. The district court granted Bovard's request and held a new suppression hearing on September 14, 2000. Following the hearing, the court denied Bovard's motion in its entirety, including the request that his statements be suppressed.

The matter proceeded to a new jury trial in the district court on April 3, 2002. The jury convicted Bovard of the driving under the influence charge.

On May 17, 2002, he appealed his conviction to the court of appeals asking the court to determine essentially: (1) whether the law of the case doctrine required the district court to follow an unappealed suppression ruling of the county court, and (2) whether the district court erred in refusing to suppress his sobriety tests under the Fourth and Fifth Amendments. Following initial briefings on the merits, the court of appeals directed the parties to brief the question of why the appeal should not be dismissed for

lack of subject matter jurisdiction. In a split decision, the court dismissed Bovard's appeal for lack of subject matter jurisdiction. *People v. Bovard*, 87 P.3d 215, 216 (Colo.App. 2003).

The court opined that Crim. P. 37(h), and section 13–6–310(4), C.R.S. (2004), would require Bovard to petition this court for discretionary review of the district court's judgment rather than allow him to pursue direct appeal. *Id.* It acknowledged that a trial de novo was required under Crim. P. 37(g) because of the lost record, and recognized that the judgment entered after the de novo trial was enforceable as that of the district court. *Id.* The court concluded, however, that whether the district court merely reviewed the county court record or conducted a full de novo trial, Bovard was not entitled to any further direct appeal. *Id.* To the contrary, the court was persuaded that by granting the defendant a right of appeal from the county court to the district court, and by authorizing further review of the district court judgment through the certiorari review process of this court, the general assembly made no special provisions for direct appeal from the final judgment of the district court entered after a trial de novo. *Id.* at 216–17.

Finally, the court rejected Bovard's contention that section 13–4–102(1), conferring broad jurisdiction on the court of appeals over final judgments of the district court required the court of appeals to assume subject matter jurisdiction. *Id.* at 217. It reasoned that the general assembly placed exclusive jurisdiction in the district court over appeals from the county court. *Id.*

In his dissent, Judge Taubman argued that the statute and rule presume that a county court defendant's appeal as of right from the final judgment of the district court is only exhausted when the district court reviews the case based on the county court record. *Id.* at 218. In his view, while the statute provides that appeals from judgments of the county court must be taken to the district court, a trial de novo conducted by the district court is not an appellate proceeding. *Id.* Accordingly, Judge Taubman urged that

---

4. Section 13–6–309, C.R.S. (2004), authorizes the county court judge to direct that a verbatim record be kept by stenographic means or by electronic devices.

section 16–12–101, C.R.S. (2004), granting the defendant a right of appeal to review the proceedings resulting in his conviction, authorizes a direct appeal from the district court judgment entered from the de novo trial to the court of appeals. *Id.* at 219.

We granted certiorari to determine whether the court of appeals erred in rejecting Bovard's appeal on the grounds that his only remedy was to request a writ of certiorari issued in the discretion of the supreme court.[5] We now hold as a matter of law that because the district court issued its final judgment while acting in its capacity as a trial court, and not in its appellate role, the statute and rule permit Bovard a direct appeal of the final judgment of the district court to the court of appeals. We hold also that where the defendant is entitled to an appeal as of right, discretionary review by petition for certiorari is an inadequate substitute.

## II. Analysis

### A. Appeals as of Right from Final Judgments of the District Court

### 1. Judgment of the District Court Sitting in its Appellate Capacity

The right to an appeal from the final judgment of a county court is governed entirely by statute. *Callahan v. Jennings,* 16 Colo. 471, 476, 27 P. 1055, 1056 (1891) ("There is no constitutional right to an appeal from the county court to the district court; such right exists only when the legislature has expressly or by clear implication declared in its favor."). It is a wholly established axiom of statutory construction that courts must ascertain and give effect to the general assembly's intent when interpreting a statute. *See State v. Nieto,* 993 P.2d 493, 500 (Colo.2000); *People v. Shinaut,* 940 P.2d 380, 382 (Colo.1997); *People v. District Court,* 713 P.2d 918, 921 (Colo.1986). The general assembly's intent is reasonably effectuated if courts give the relevant statutory

provisions their plain and ordinary meanings. *People v. Andrews,* 871 P.2d 1199, 1201 (Colo.1994). Courts need not adhere to other rules of statutory construction if the legislative intent appears with reasonable certainty. *People v. District Court,* 713 P.2d at 921. The statute must be considered as a whole, however, and where possible, should be interpreted so as to give consistent, harmonious, and sensible effect to all its parts. *Id.; Nieto, supra.*

The defendant's statutory right of appeal from county to district court dates back to late statehood. *See* § 575(5), G.L. (1877). The current version of the statute was adopted by the general assembly in 1964. Ch. 45, sec. 36, § 56–2–18, 1964 Colo. Sess. Laws, 418, 421 (currently codified as amended at § 13–6–310, C.R.S. (2004)). The statute offers the defendant who files notice of appeal within 30 days of the final judgment of the county court a right of appeal to the district court of that county. *Id.*

The plain language of the statute suggests that it is concerned with the district court's appellate jurisdiction exercised by review of the county court record. The statute equates "appeal," with a review "based upon the record made in the county court." *See* § 13–6–310(1); *see also* § 13–6–310(2) ("The district court shall review the case on the record on appeal . . . .").

Further, the statutory remedies available to the district court upon appellate review contemplate that the district court's appellate jurisdiction arises out of the county court's record. Under the statute,

[t]he court shall review the case on the record on appeal and affirm, reverse, remand, or modify the judgment; except that the district court in its discretion, may remand the case for a new trial with such instructions as it may deem necessary, or it may direct that the case be retried de novo before the district court.

§ 13–6–310(2). The statutory language affords the district court three threshold alter-

---

**5.** Bovard cited the issue as,

[w]here petitioner's appeal from his county court conviction resulted in a trial de novo in district court due to loss of the record, whether the court of appeals denied petitioner his right

to appeal by holding that he may not pursue a direct appeal of the district court's judgment to the court of appeals and that his only remedy was to request a writ of certiorari from the supreme court.

natives on appeal: (1) it may review the case on the record; (2) if the record is insufficient, it may remand the case for a new trial with instructions to the county court; or (3) it may direct that the case be tried de novo before it. *See People v. Williams,* 172 Colo. 434, 437–38, 473 P.2d 982, 983 (1970). Interpreting this very provision, we made clear in *Williams* that by providing for both review on the record and "trial," either "New or De novo," the general assembly "recognized the historical differences between the two both procedurally and in substance, so it is incumbent on the courts to make the same differentiation in carrying out their functions under the statute." *Id.* at 439, 473 P.2d at 984. Accordingly, we characterized the district court as a court of dual jurisdiction having the authority to decide appeals from the county court and to sit as a trial court with the jurisdiction to issue its own trial court findings and judgment. *Id.* at 437–38, 473 P.2d at 983–84; *see also People v. Luna,* 648 P.2d 624, 625 (Colo.1982) (distinguishing between the district court's appellate and trial authority).[6]

■ In total, the hallmark of the district court's appellate function is review of the judgment of the county court, based upon the county court record. *Id.* When exercising appellate review, the court may affirm, reverse, remand, or modify the county court judgment. *See* § 13–6–310(2); *see also* Black's Law Dictionary, 1321 (8th ed. 2004) ("Appellate review constitutes examination of a lower court's decision by a higher court, which can affirm, reverse, or modify the decision."). The district court electing to act in its appellate authority cannot alter or depart from the county court's findings of fact in any way. *Williams,* 172 Colo. at 438, 473 P.2d at 984; *People v. Gallegos,* 188 Colo. 245, 248, 533 P.2d 1140, 1142 (1975) (where

the district court is exercising its power of review, it cannot act as a fact finder); *see also State v. Daniels,* 224 Neb. 264, 397 N.W.2d 631 (1986) (interpreting Nebraska statute which specifically limited district court appellate review to examination of the record for error and abuse of discretion and suggesting that de novo consideration of the facts would make the court a trial court and not an intermediate court).

Overall, our opinions suggest that the defendant whose case is resolved by the district court acting in its capacity as appellate court has exhausted his appeal as of right. Consequently, his statutory remedy from the appellate judgment of the district court is limited to certiorari review issued in the discretion of this court. *See* § 13–6–310(4). Conversely, when the district court chooses to act as a trial court by conducting de novo proceedings, our cases, rules, and the statutes suggest that the defendant retains a right of appeal.

**2. Judgment of the District Court Sitting in its Capacity as Trial Court**

To determine the effect of a trial de novo on the defendant's further appeal as of right, we look first to the statutes. *See generally* § 13–40–120 (explaining that appellate review of the judgment of district courts of this state is permitted as provided by law and the Colorado Appellate Rules); *see also* § 16–12–101, C.R.S. (2004) (guaranteeing every defendant a right to appeal from the proceedings resulting in conviction). Specifically, the statute places initial jurisdiction over final judgments of the district court in the domain of the court of appeals, "except as provided in section 13–6–310." *See* § 13–4–102(1)(f).

---

**6.** In *Walgreen Co. v. Charnes,* 819 P.2d 1039 (Colo.1991), we characterized de novo review as within the scope of appellate jurisdiction and noted that this court has condoned de novo review in appellate tribunals; however, we were concerned only with construing the provision for appellate review of the revenue manager's assessment of a Use Tax: namely, whether the statute authorizing a trial de novo in the district court upon appeal of the revenue manager's tax assessment permitted a judicial body to levy taxes in violation of the separation of powers. We

upheld the statute on the basis of its limited scope—allowing the district court to review the sales manager's determination without assessing any taxes. We were not presented with the issue of whether a trial de novo in the sense of a new trial gives rise to direct appeal of the judgment of the trial court. In fact, the statute at issue specifically permitted such an appeal even though, as in this case, the Taxpayer's only relief from the revenue manager's determination is an appeal to the district court.

We have discussed the distinction between "appeals" and "trials de novo." In particular, the statute allows the district court to remand the case for a new trial or try the case de novo. *See* § 13–6–310(2).

■ A trial de novo is "[a] new trial on the entire case, on both questions of fact and issues of law, conducted as if there had been no trial in the first instance." Black's Law Dictionary at 1512. Thus, section 13–6–310(2), by its terms, permits the district court either to remand the case to the county court for a new trial, or otherwise to conduct its own new trial.[7] As previously noted, the statute equates appeal with review based on the record. Where the appeal is taken without a record, the district court cannot sit as an appellate court reviewing a non-existent or deficient record. Rather, it may remand for a full new trial at the county court level, or could hold a new trial itself.[8] Similarly, Crim. P. 37(g) instructs that the case must be tried de novo when the record is inadequate—presumably because the district court cannot, in the face of an inadequate record, act as an appellate court.

Notably, the express intent of the rule is that a judgment from a de novo trial supplants the county court decision and is treated as the district court's judgment. *See Hylton v. City of Colorado Springs,* 32 Colo. App. 9, 505 P.2d 26 (1973) (recognizing that an appeal of misdemeanor cases, when tried de novo by the district court, results in the judgment being that of the district court and so enforceable). To that end, the rule provides:

> unless there is further review by the Supreme Court [sic] upon writ of certiorari pursuant to the rules of such court, after final disposition of the appeal the judgment on appeal entered by the district court shall be certified to the county court for action as directed by the district court, *except in cases tried de novo by the district court or in cases in which the district court modifies the county court judgment, and in such cases, the judgment on appeal shall be that of the district court and so enforceable.*

Crim P. 37(h). (emphasis added). The rule plainly excludes cases tried de novo, and those in which the district court modifies the judgment of the county court, from exclusive further review by the supreme court upon writ of certiorari, and rather contemplates that that district court judgment becomes the judgment "on appeal."

Rule 37(h), thus, is broader than the statute. The Rule, like the statute, provides that the defendant may appeal from the final judgment of the district court in cases in which the district court tries the case de novo. However, unlike the statute, the Rule can also be read to create an appellate remedy when the district court merely modifies the county court judgment.

---

7. Crim. P. 37(g) is more narrow than the statute in that it appears to require the district court to conduct the de novo trial itself, rather than permitting that court, in its discretion, to remand to the county court for a new trial.

8. We note that trial de novo is styled in the statute as an appeal. *See, e.g.,* Crim. P. 37(g) (providing in the same paragraph for mandatory de novo review and at the same time stating that "[n]o action on appeal shall result in an increase in penalty"); § 13–6–102 (where trial de novo is placed within the provision designated appeal from county court). However, the defendant's right to appeal from the district court's trial de novo is not belied by the fact of that styling. In *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the Supreme Court addressed the two-tiered system of review offered in states such as Colorado, for appellate review from decisions of inferior courts, including county courts. The Court took up the appeal specifically to determine the constitutionality of such a process for purposes of double jeopardy. It intimated that even though the state statute at issue had denominated a de novo trial an appeal, that designation did not detract from the understanding that the trial was not truly an appeal. *Id.* at 111 n. 7, 92 S.Ct. 1953. The court emphasized that "the trial de novo represents a completely fresh determination of guilt or innocence. It is not an appeal on the record." *Id.* at 117, 92 S.Ct. 1953. Moreover, to the extent that any double jeopardy claims might emanate from our determination that the styling of a trial de novo as appeal does not imbue it as such, *Colten* makes clear that whether or not the proceeding is denominated an "appeal," it raises no double jeopardy problems. *See also North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (declaring that longer sentence imposed following reconviction does not automatically give rise to double jeopardy concerns).

We choose to clarify the rule to conform to section 16–12–101. The statute offers every person convicted of an offense under the statutes the right of an appeal to review *the proceedings resulting in conviction.* *See* § 16–12–101. (emphasis added); *see also People v. McKenna,* 196 Colo. 367, 371, 585 P.2d 275, 279 (1978) (observing that in substantive matters, a statutory enactment prevails over a conflicting supreme court rule); *People v. D.K.B.,* 843 P.2d 1326, 1331 (Colo. 1993) ("[S]ubstantive statutes create, eliminate or modify vested rights or liabilities, while procedural statutes relate only to remedies or modes of procedure to enforce such rights or liabilities.").

■ Because section 16–12–101 authorizes only appeals from "proceedings resulting in conviction," it seems logical that the trial de novo conducted in the district court is such a proceeding, but that the decision of the district court merely modifying the judgment of the county court arises out of a review on the record and is not a proceeding resulting in a conviction.[9] Section 13–6–310(2) provides added support for the understanding that the legislature did not envision a direct appeal from the district court's modification of the county court judgment. There, the statute distinguishes an "appeal" from "trial de novo." It includes within the ambit of "appeal" a decision of the district court affirming, reversing, remanding, or *modifying* the judgment. *Id.* The defendant's only remedy from the outcome of such an appeal is discretionary review. *See* § 13–16–310. Therefore, under section 13–6–310(2), as well as under section 16–12–101, the defendant does not have an appeal as of right from a judgment of the district court that only modifies the county court judgment. To the extent Crim. P. 37(h) suggests otherwise, we view it as too broad and inconsistent with the statute. Accordingly, we read it to provide that only in cases tried de novo by the district court will the district court judgment be subject to direct appeal.

■ Justifiably, then, the defendant may seek direct appeal when the district court enters its judgment from a de novo trial. A contrary reading of the rule would violate the statutory requirement that every person convicted of a crime under Colorado law has the right of an appeal to "review the proceedings resulting in conviction." § 16–12–101. Under Rule 37(h), the proceeding resulting in conviction would be the district court trial de novo, not the county court ruling. Surely, to denominate the trial de novo conducted in the district court a "review" within the meaning of the statute would render the statutory scheme meaningless. A trial de novo conducted by the district court is not a review of the county court judgment; it is an entirely new proceeding. *See Colten v. Kentucky,* 407 U.S. 104, 117, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). The final judgment of the district court, following a trial de novo, thus, is subject to review by the court of appeals under both sections 13–4–102 and 13–6–310.[10]

9. In *People v. Smith,* 874 P.2d 452 (Colo.App. 1993), the court of appeals dismissed, for lack of subject matter jurisdiction, the defendant's appeal from a district court decision modifying his judgment of conviction entered by a county court. The court reasoned that Crim. P. 37(h) addressed only the enforcement of the modified county court judgment. We agree with the court's conclusion; but to the extent that its opinion posits that a trial de novo conducted in the district court does not offer the right of appeal, we depart from the court of appeals' rationale.

10. Our decision applies with equal force to matters appealed from municipal court judgments if the conviction involves offenses defined by state statute. The applicable statute provides two avenues for appeal from judgments of municipal courts. Appeals from municipal courts of record are made to the district court of the county; while appeals from a municipal court which is not a qualified court of record goes to the county court. *See* § 13–10–116(1) & (2). As noted, section 16–12–101 provides the defendant convicted of an *offense* the right of appeal from the proceeding resulting in conviction. "Offense" and "crime" are synonymous and "mean a violation of, or conduct defined by, *any state statute* for which a fine or imprisonment may be imposed." § 18–1–104(1), C.R.S. (2004). (emphasis added). We have acknowledged that the violation of a municipal ordinance does not come within the definition of section 18–1–104. *See City of Greeley v. Hamman,* 12 Colo. 94, 20 P. 1 (1888). More importantly, however, we have recognized that there are overlapping violations, i.e., violations punishable by both state statutes and municipal ordinances. *See People v. Rhorer,* 967 P.2d 147 (Colo.1998). Under the circumstances, a crime prosecuted pursuant to a municipal ordinance is an offense for purposes of the

The statutes and criminal rules demonstrate that while the defendant's appeal as of right from county to district court is satisfied when the district court acts in its appellate capacity, that right is not satisfied when the district court enters the judgment from a trial de novo. The only remaining question then is whether, as the People contend, certiorari review suffices as an appellate review from a final judgment of the district court. We conclude that it does not.

## B. Certiorari Review as Adequate Remedy for Appeal as of Right

Certiorari review and direct appeal are independent modes of appellate review that serve distinct goals. The United States Supreme Court has demarcated the relevant distinctions between both remedies in two leading cases, *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), and *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).[11] *Evitts* concerned a Kentucky statute that guaranteed defendants in all civil and criminal cases "as a matter of right at least one appeal to another court." 469 U.S. at 402, 105 S.Ct. 830. The Court declared the prominent feature of the defendant's right to appeal to be an opportunity "to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful." Hence, the defendant is entitled to a review on the merits of his appeal in order to determine whether his conviction was lawful and just.

Additional considerations impact discretionary appeals. In *Ross,* the defendant sought discretionary review after his conviction had been affirmed on appeal by the North Carolina Court of Appeals. *Id.* at 604, 94 S.Ct. 2437. As the Court perceived it, certiorari, unlike direct appeal, does not merely focus on whether the adjudication of the defendant's guilt was proper:

> but rather whether the subject matter of the appeal has significant public interest, whether the cause involves legal principles of major significance to the jurisprudence of the State, or whether the decision below is in probable conflict with a decision of the Supreme Court. The Supreme Court may deny certiorari even though it believes that the decision of the Court of Appeals was incorrect, since a decision which appears incorrect may nevertheless fail to satisfy any of the criteria discussed above.

*Id.* at 615, 94 S.Ct. 2437. (internal quotation marks omitted).

Our certiorari review requirements, as set forth in C.A.R. 49, are analogous to those addressed in *Ross,* governing the North Carolina Supreme Court's review process.[12]

▮▮▮ The decision to grant writs of certiorari under the rule is entirely within this court's sound discretion, and is reserved for

(1) [Whether] the district or superior court on appeal from the county court has decided a question of substance not heretofore determined by this court;

(2) [Whether] the Court of Appeals, or district or superior court on appeal from the county court, has decided a question of substance in a way probably not in accord with applicable decisions of the Supreme Court;

(3) [Whether] a division of the Court of Appeals has rendered a decision in conflict with the decision of another division of said court; the same ground applies to judgments and decrees of district courts on appeals from the county court when a decision is in conflict with another district court on the same matters;

(4) [Whether] the Court of Appeals has so far departed from the accepted and usual course of judicial proceedings or so far sanctioned such procedure by a lower court as to call for the exercise of the Supreme Court's power of supervision.

---

state statute. *See id.* at 150 (holding that violations of restraining orders are punishable by both state statute and municipal ordinance, thus, a "no-contact" order issued pursuant to a municipal ordinance constitutes a "crime" for purposes of second degree burglary); *see also* § 42–1–101 *et seq.,* C.R.S. (2004) (defining several traffic violations also punishable by municipal codes). Thus, while a trial de novo in a county court involving a municipal ordinance or charter violation is an appeal, *Rainwater v. County Court,* 43 Colo.App. 477, 478, 604 P.2d 1195, 1197 (1979), it is not an appeal if the offense is also defined by state statute.

**11.** *See generally People v. Valdez,* 789 P.2d 406 (Colo.1990), for a discussion of *Evitts, Ross* and our appellate review process.

**12.** Under C.A.R. 49(a), the scope of factors that guide this court's decision to grant a petition, "while not controlling nor fully measuring [our] discretion" are:

cases in which there are "special and important reasons" supporting certiorari. *See* C.A.R. 49(a). As such, under both *Ross* and *Evitts,* our certiorari review process cannot adequately afford the defendant a right of appeal from the proceeding resulting in his conviction as required by section 16–12–101. As the Supreme Court explained it, unlike the defendant in *Ross* who sought discretionary review following affirmance of his conviction on appeal, the defendant who seeks direct appeal for the first time "has not had the benefit of a previously prepared transcript, a brief on the merits of the appeal, or a previous written opinion." *See Evitts,* 469 U.S. at 402, 105 S.Ct. 830.

In contending that our certiorari review process affords defendants an adequate appeal from district court judgments, neither the People nor the court of appeals suggests that certiorari review provides a full and complete review on the merits. Instead, both understand our decision in *Bill Dreiling Motor Co. v. Court of Appeals,* 171 Colo. 448, 468 P.2d 37 (1970), as cementing the proposition that direct appeal from the final judgment of the district court is not required because of our statement that "certiorari review by the supreme court constitutes an appellate review." To be sure, in *Bill Dreiling* we did hold that certiorari review constitutes appellate review under our constitution. *Id.* at 452, 468 P.2d at 39. In context, however, *Bill Dreiling* has little application here.

■ *Bill Dreiling* arose on the heels of the general assembly's most recent creation of the court of appeals. In that case, we were asked to decide whether an appeal to the court of appeals rather than to this court, following the creation of the court of appeals by the legislature, contravened Article VI, Section 2(2) of the state constitution, which authorized appellate review by the supreme court of every final judgment of the district court. *Id.* We concluded that certiorari review was indeed appellate review, explaining that filing of a petition for writ of certiorari is an application of right. *Id.* We added, "the study by this court of that petition and of the record on appeal to determine whether to grant or deny the petition constitutes a review;" and remarked, "as to petitions which

are denied, we hold that this review is 'appellate review' as that term is used · in the Colorado Constitution." *Id.* Accordingly, we held that an appeal of right from the district court directly to the Colorado Supreme Court was not required under the constitution. *Id.* Most importantly, however, our statement in *Bill Dreiling* does not imply any retreat from the established maxim that the right to direct appeal requires a full review on the merits by an appellate tribunal. Essentially, *Bill Dreiling* considered only the issue of whether certiorari review following a direct appeal satisfies the constitutional provision requiring appellate review by the supreme court.

None of our post-*Bill Dreiling* decisions have ever suggested that because certiorari review constitutes appellate review, such a process suffices as the defendant's appeal as of right. In fact, we have expressed the contrary. In *Menefee v. City and County of Denver,* 190 Colo. 163, 165, 544 P.2d 382, 384 (1976), although we relied on *Bill Dreiling* for its precept that certiorari constitutes appellate review under the Colorado Constitution, we declared that denial of a petition for certiorari does not constitute a determination ·of issues on the merits. We reasoned that denials of petitions in criminal cases "mean nothing more than that this court has declared that the case· is not properly postured for further appellate review." *Id.; see also* C.A.R. 54 ("No mandate shall issue upon denial of certiorari.").

In *Allison v. ICAO,* 884 P.2d 1113 (Colo. 1994), we addressed *Bill Dreiling* in the workers' compensation realm. In that case, initially, section 8–53–119, 3B C.R.S. (1986), granted direct appeal of workers' compensation decisions to the court of appeals. *Id.* at 1116. The general assembly subsequently repealed the statute and instituted in its place a statute limiting review of workers' compensation claims to a discretionary court of appeals certiorari process. *Id.* at 1117. We struck the statute as unconstitutional on the basis that "[c]ertiorari does not constitute judicial review on the merits." *Id.* at 1118. We highlighted, as the primary element ·cautioning against substituting certiorari review for the right of appeal, the concern that

"neither the granting nor the denial of certiorari by the court of appeals addresses or resolves the merits of the issues raised on appeal . . . ." *Id.* Turning to *Bill Dreiling,* we stated that it did not stand for the proposition that certiorari review constitutes judicial review on the merits. *Id.* at 1120. In sum, like the United States Supreme Court, we have never concluded that the right to direct appeal may be vindicated through discretionary review.

Because section 16–12–101 grants the defendant at least one appeal from the proceeding resulting in his conviction, we conclude that appeal as of right means direct appeal to an appellate tribunal. Here, that tribunal is the court of appeals. Certiorari review granted at the discretion of this court is inadequate.

## C.  Application

Section 16–12–101 guarantees every person convicted of a crime under Colorado law the right of appeal to "review the proceedings resulting in conviction." Section 13–6–104 prescribes the means by which a person convicted in the county court may appeal his conviction from the final judgment. It is undisputed that upon his conviction in the Gunnison County Court for driving under the influence of alcohol, Bovard sought review of the county court's ruling on his Motion to Suppress in accordance with the statute, and that because of the misplaced county court record, he had the right, under Crim. P. 37(g), to a trial de novo. A trial de novo was held in the district court, which culminated in the court issuing its own judgment of conviction. As a matter of law, the final judgment of the district court extinguished the earlier county court judgment. *See* Crim. P. 37(h). Thus, Bovard is entitled to an appeal of the judgment that resulted in his conviction, that being the district court's judgment of conviction.

Because the district court held its own new trial, moreover, it did not act in its appellate capacity, which would have entailed issuing its judgment based on the review of an adequate county court record. *See Luna,* 648 P.2d at 625. Given that procedural posture, Bovard has not been offered access to an appellate tribunal to challenge the proceedings that resulted in his conviction. He has been deprived of the right to a review of the merits of his appeal. *See Evitts,* 469 U.S. at 402, 105 S.Ct. 830. Under the circumstances, we cannot agree that discretionary review by this court suffices to afford Bovard his appeal as of right.

## III.  Conclusion

Because section 13–6–310 governs only the district court's appellate jurisdiction, we hold as a matter of law that where the district court acted in its capacity as a trial court by conducting a trial de novo, the final judgment of the district court is subject to direct appeal. Thus, we conclude that the court of appeals erred in holding that it lacked subject matter jurisdiction over Bovard's appeal. We reverse the court of appeals and remand this case to that court for consideration of the merits of the appeal.