Petitioner/Cross–Respondent: Kevin PAUL,

v.

Respondent/Cross–Petitioner: The PEOPLE of the State of Colorado.

No. 03SC668.

Supreme Court of Colorado, En Banc.

Jan. 31, 2005.

The Law Firm of Ted Hess, P.C., Theodore G. Hess, Glenwood Springs, for Petitioner/Cross–Respondent.

John W. Suthers, Acting Attorney General, Monica M. Marquez, Assistant Attorney General, Criminal Justice Section, Appellate Division, Denver, for Respondent/Cross–Petitioner.

COATS, Justice.

Both the People and defendant Kevin Paul petitioned for review of various aspects of the court of appeals judgment affirming the trial court's refusal to dismiss criminal charges following a mistrial. *People v. Paul*, 83 P.3d 1171 (Colo.App.2003). The trial court denied without comment Paul's pretrial motion asserting former jeopardy. The court of appeals agreed with Paul that the denial of his motion was an immediately appealable order, but it affirmed the lower court judgment, holding that Paul implicitly consented to the mistrial by failing to expressly object and that there was, in any event, manifest necessity for ordering a mistrial.

Although denial of the defendant's pretrial motion was not an immediately appealable order, we choose to exercise our original jurisdiction pursuant to C.A.R. 21, and we hold that under the circumstances of this case, the court's declaration of a mistrial was neither consented to nor justified by manifest necessity. The judgment of the court of appeals is therefore reversed and remanded with instructions to order the charges dismissed.

I.

Kevin Paul was charged with vehicular assault[1] and driving under the influence.[2] Twelve days before trial, the People moved to strike the defendant's accident reconstruction expert on the grounds that the defendant's disclosures were untimely and incomplete. Six days before trial, the trial court heard the motion but made no ruling.

At a conference two days before trial, the court again addressed the People's motion to strike, stating that it felt sand-bagged by defense counsel and finding defense disclosures incomplete. The court offered the People a continuance with sanctions, including payment for all trial preparation costs and unused airline tickets. The People rejected this proposal, and the issue remained unsettled.

On the fifth day of trial, the defense called its expert to testify, and the People renewed their motion to strike. At that point, the court informed the parties that that they could either request a continuance or it could declare a mistrial. Indicating that the trial should already have been over, that it was late in the day, and that it was doubtful whether trial could finish by the next day, the court ignored a suggestion by the People that the witness' testimony be limited as a sanction, and instead restated the same two options to the parties. The prosecuting attorney responded that he was not requesting either alternative, and defense counsel similarly responded, "Nor do I." The court then declared a mistrial sua sponte. No further objection was voiced by either party, and the court gave the following explanation to the jury:

> I have a lot of questions as to whether or not we can get through with this lawsuit tomorrow. Now, tomorrow will be the third additional day. We were scheduled for three days to begin with. Tomorrow is the third day. Miss Key, who was deemed the alternate, was released because she had an activity planned with her daughter, and I think that some of the rest of you had activities planned as well. In light of all that, I have decided to declare a mistrial, so your services are no longer needed.

Prior to the commencement of a second trial, the defendant moved to dismiss the charges, asserting former jeopardy as a bar. The trial court orally denied the motion, and the defendant directly appealed to the court of appeals. Finding that Colorado recognizes the federal collateral order exception to the final judgment rule and that the defendant had an immediate right to appeal, the court of appeals nevertheless upheld denial

---

1. § 18–3–205(1)(b), C.R.S. (2004).

2. § 42–4–1301(1)(a), C.R.S. (2004).

of the motion, ruling that the defendant consented to the mistrial by failing to expressly object. The court of appeals also held that the defendant's incomplete disclosures and the prosecutor's resulting inability to effectively cross-examine the defense expert amounted to manifest necessity.

We issued a writ of certiorari to review the merits of the judgment, as well as the appealability of the trial court's ruling.

## II.

■ Generally, finality of judgment has been required as a predicate for federal appellate jurisdiction. *See, e.g., Abney v. United States,* 431 U.S. 651, 656, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). The United States Supreme Court has long recognized, however, that certain collateral orders amount to "final decisions" within the meaning of 28 U.S.C. section 1291 (2000), and are therefore immediately appealable, despite not terminating the entire case. *See Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (articulating the collateral order doctrine). The Supreme Court has expressly included among these immediately appealable collateral orders the denial of pretrial motions to dismiss criminal charges on double jeopardy grounds. *Abney,* 431 U.S. at 662, 97 S.Ct. 2034. At the same time, however, it has made clear that its collateral order doctrine is not a matter of constitutional necessity and, in accord with principles of federalism, is not binding on the states. *Johnson v. Fankell,* 520 U.S. 911, 916–18, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997).

■ Except as expressly provided by statute or rule, appellate jurisdiction in Colorado is also generally limited to final judgments. *See* C.A.R. 1(a); *see also* § 13–4–102(1), C.R.S. (2004). For various reasons, the general assembly has designated certain classes of orders sufficiently final for purposes of appealability. *See, e.g.,* § 16–12–102, C.R.S. (2004). In addition, this court has recognized that cases may be divided into separate charges or claims, the resolution of some of which may be sufficiently final to qualify for an immediate appeal. *See,*

*e.g., People v. Gallegos,* 946 P.2d 946, 950 (Colo.1997); C.R.C.P. 54(b), C.R.S. (2004).

We have even adopted the federal collateral order exception under the limited circumstances in which a federal cause of action pursuant to 42 U.S.C.1983 is permitted in state court and an order denying qualified immunity in such an action would be immediately appealable if it were tried in federal court. *Furlong v. Gardner,* 956 P.2d 545 (Colo.1998). As we explained in *Furlong,* a public entity's or employee's motion for summary judgment based upon sovereign immunity is expressly permitted by statute. *See* Colorado Governmental Immunity Act, §§ 24–10–101 to –120, C.R.S. (2004). Although the federal collateral order doctrine does not apply to state court judgments, we reasoned that disparate treatment of the appealability of a motion to dismiss asserting qualified immunity in a section 1983 action would violate principles of neutrality and raise questions of federal preemption. *Id.* at 550–51 (explaining *Lakewood v. Brace,* 919 P.2d 231 (Colo.1996)).

We have never held, however, that the federal collateral order exception, interpreting the meaning of "final decisions," as that term appears in 28 U.S.C. section 1291, is equally applicable to the interpretation of "final judgments," as that term is used in C.A.R. 1(a); and we have particularly not held that the collateral order exception governs the appealability of orders denying pretrial motions to dismiss on double jeopardy grounds.

In *County Court v. Ruth,* 194 Colo. 352, 575 P.2d 1 (1977), this court acknowledged that federal law treats an order denying a pre-trial motion to dismiss on double jeopardy grounds as an immediately appealable collateral order, and that the rationale for that decision would appear to apply as well to other pre-trial motions challenging the very jurisdiction of the court to proceed. The issue before this court in *Ruth,* however, was whether an exercise of the district court's original jurisdiction to grant or deny a writ of prohibition pursuant to 106(a)(4) was itself an appealable order; and if so, whether the district court's refusal to entertain the merits of a 106 complaint would also deprive a re-

viewing court of jurisdiction to address the merits. *Id.* Answering both questions in the affirmative, we declined to address the merits of the joinder issue considered by the court of appeals, and instead remanded with instructions for the district court to issue a citation to show cause to the trial court, as required by then existing C.R.C.P. 106(a)(4). *Id.* at 357, 575 P.2d at 4.

In addition, however, we noted that the actual issuance of a writ of prohibition by the district court on remand would be an appropriate remedy only if the trial court's refusal to dismiss was not an immediately appealable order, *id.* at 355–56, 575 P.2d at 3; and despite our remand to issue a citation pursuant to C.R.C.P. 106, we openly advised the district court that the federal rule in *Abney* raised questions about our prior presumption that pre-trial motions to dismiss were not immediately appealable. *Id.* at 356, 575 P.2d at 3. By our remand order, we made clear that we were not answering the question whether denial of the motion to dismiss was immediately appealable. *Id.* at 357, 575 P.2d at 4. By addressing the merits of the defendant's joinder motion in a C.R.C.P. 106 proceeding on remand, and actually issuing a writ of prohibition, the district court similarly did not find the order immediately appealable, and the issue was therefore not before this court upon recertification. *See Ruth v. County Court in and for El Paso County,* 198 Colo. 6, 595 P.2d 237 (1979).

The question suggested in *Ruth* has remained unanswered for nearly a quarter of a century, and the presumption that such orders are not immediately appealable in this jurisdiction has continued to govern state practice. *See, e.g., People v. Berreth,* 13 P.3d 1214 (Colo.2000) (issuing rule pursuant to C.A.R. 21 and barring retrial following erroneous declaration of mistrial); *Sweaney v. Dist. Court,* 713 P.2d 914 (Colo.1986) (issuing rule following denial of defendant's motion to dismiss alleging violation of speedy trial provisions of Interstate Agreement on Detainers); *Marquez v. Dist. Court,* 200 Colo. 55, 613 P.2d 1302 (1980) (issuing rule following denial of defendant's motion to dismiss for violation of statutory right to speedy trial); *Hampton v. Dist. Court,* 199 Colo. 104, 605

P.2d 54 (1980) (holding original proceeding "appropriate vehicle" for resolution of defendant's pre-trial claim that he has been denied a speedy trial); *Brutcher v. Dist. Court,* 195 Colo. 579, 580 P.2d 396 (1978) (issuing rule to show cause following denial of defendant's motion to dismiss for failure to join).

Criminal defendants in Colorado are expressly provided a statutory right of appeal from, among other things, any proceeding resulting in a conviction, *see* § 16–12–101, C.R.S. (2004); the imposition and propriety of a felony sentence, *see* § 18–1–409; the denial of a motion for post-conviction relief, *see* Crim. P. 35(c); and the denial of bond, *see* § 16–4–205, C.R.S. (2004). By contrast, the denial of pre-trial motions—even those asserting constitutional or jurisdictional grounds for dismissal—have been consistently viewed as insufficiently final to appeal and therefore subject to immediate review only by invoking the original jurisdiction of a higher court to issue an extraordinary writ. *See Ruth,* 194 Colo. at 355, 575 P.2d at 3.

In addition to involving the construction of different statutory language and different historical practice, differences in volume and the structure of the respective court systems militate against the wholesale adoption of the federal collateral order exception in this jurisdiction. In *Abney,* the United States Supreme Court recognized the systemic danger of permitting criminal defendants to derail prosecutions at their choice and noted that "summary procedures and calendars" could be used by federal appellate courts to weed out frivolous claims and undue delay. *Abney,* 431 U.S. at 662 n. 8, 97 S.Ct. 2034. Unlike the practical limitations of seeking extraordinary relief from the United States Supreme Court, proceeding by invocation of this court's original jurisdiction provides a realistic option for review of assertions of former jeopardy. Whether or not a rule is ultimately issued and further proceedings are ordered, the opportunity to petition, and for this court to discretionarily intervene, provides an adequate and effective method of immediate review, without unnecessarily delaying criminal prosecutions. *Cf. Bovard v. People,* 99 P.3d 585, 593 (Colo.2004); *Bill Dreiling Motor Co. v. Court of Appeals,* 171

Colo. 448, 452, 468 P.2d 37, 39 (Colo.1970) (recognizing the right to petition for writ of certiorari as a form of appellate review).

## III.

■ Although the defendant did not have a right to appeal in this case, we may nevertheless exercise our original jurisdiction, pursuant to C.A.R. 21, to address the merits, and we choose to do so here. *See, e.g., People v. Young,* 814 P.2d 834, 838 (Colo. 1991). An original proceeding is appropriate to prevent an excess of jurisdiction by a lower court when no other remedy would be adequate. *Id.; see also Ruth,* 194 Colo. at 355, 575 P.2d at 2. Here, the merits of the issue have been fully briefed and argued; the court of appeals has published its resolution; and in light of our holding, the defendant would otherwise be forced erroneously to endure a second trial.

## IV.

■ Constitutional protections against being twice placed in jeopardy for the same offense not only disallow the government repeated chances to obtain a conviction, but also ensure defendants the right to have a verdict returned by a particular jury. *Arizona v. Washington,* 434 U.S. 497, 503; 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Berreth,* 13 P.3d at 1216. Therefore, if a criminal trial is terminated before a verdict, guarantees against double jeopardy will bar a second trial unless the defendant consented to the termination or it was manifestly necessary. *United States v. Dinitz,* 424 U.S. 600, 606–07, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Berreth,* 13 P.3d at 1216.

### A.

■ In furtherance of these constitutional protections, the general assembly has statutorily provided that a prosecution is barred whenever a former prosecution for the same offense has been improperly terminated. § 18–1–301(1)(d), C.R.S. (2004). While the statute does not purport to identify all of the reasons for which a termination might be proper, it makes clear that termination will not be considered improper if the defendant

consents to it or waives any objection. § 18–1–301(2)(a). By statute, a waiver occurs whenever the defendant fails to register an objection on the record, contemporaneously with the court's order. *Id.* No talismanic incantation of the words, "I object," is required by the statute to avoid a waiver; it is enough that the defense contemporaneously make clear, as a matter of record, its lack of consent or acquiescence in the termination order.

■ The record of this case does not support a finding of either consent or waiver. When confronted with a choice between a continuance and a mistrial, the prosecuting attorney, who in fact suggested a third alternative, made clear that he did not want and did not request either alternative. Defense counsel echoed, "Nor do I." Without further discussion, the court ordered a mistrial. In context, the defendant's refusal to request either option offered by the court cannot reasonably be construed as a mere lack of preference or willingness to let the court choose. It could only be understood by the court as an objection to both proposed courses of action, and it was therefore not a waiver, even under the broad definition of the statute.

### B.

■ Similarly, section 18–1–301(2)(b) specifies that termination is not improper if the trial court finds it necessary for any of a number of reasons. § 18–1–301(2)(b)(I)–(V). To be sure, this statutory enumeration is intended to be descriptive rather than exhaustive, *see Berreth,* 13 P.3d at 1217, but we have made clear that circumstances can amount to manifest necessity only if they are both "serious" and "outside the control of the trial court." *Id.* Furthermore, they must arise, or at least become apparent, when other reasonable alternatives are no longer available. *See State v. Glasscock,* 759 N.E.2d 1170, 1173 (Ind.App.2001) ("Manifest necessity contemplates a sudden and overwhelming emergency beyond the control of the court."); *State v. Buell,* 221 Conn. 407, 605 A.2d 539, 543 (1992) (Manifest necessity "requires an element of surprise; that is, the reason for the declaration of a mistrial arises or be-

comes known to the court only *after* the jury has been sworn and jeopardy has attached.").

■ Docket overcrowding and allowing trials to exceed their anticipated length do not fall within the circumstances that are beyond the court's control. *Berreth,* 13 P.3d at 1218. By the same token, while courts cannot be held responsible for failing to anticipate circumstances that may arise after jeopardy has attached, neither can a mere failure to take action on matters presented before trial place them outside the control of the court. *See, e.g., Buell,* 605 A.2d at 543 (no manifest necessity where conflict had been disclosed to the court and the prosecutor before the jury was sworn).

Here, the only explanation given by the court after ordering a mistrial involved the length of the trial and various jurors' plans. Its order, however, also clearly resulted from its belief that inadequate disclosures by the defense deprived the prosecution of an opportunity to effectively cross-examine the defense expert. Although it never actually ruled on the state's motion to strike, the court indicated that it never considered striking the witness an acceptable option. That being the case, it remains unclear why neither a brief continuance nor limiting the witness' testimony would have sufficed, but in any event, the record fails to disclose any circumstance arising at trial that was not already apparent and presented to the court by motion before trial. If these circumstances did not warrant any discovery sanction before trial, they certainly could not justify a mistrial once jeopardy attached. As such, the circumstances confronting the trial court were not beyond its control, and therefore there was no manifest necessity for a mistrial. *See Berreth,* 13 P.3d at 1217.

## V.

Although the district court's order denying the defendant's motion to dismiss was not an immediately appealable order, through the exercise of our original jurisdiction, we hold that the record supports neither a finding of manifest necessity for a mistrial nor consent or waiver of objection by the defendant. The judgment of the court of appeals is therefore reversed, with instructions to order the charges dismissed.